2006-NMCA-125

143 P.3d 756

**Maria T. STENNIS, Plaintiff–Appellant,**

v.

**The CITY OF SANTA FE,
Defendant–Appellee.**

No. 25,549.

Court of Appeals of New Mexico.

Aug. 9, 2006.

Certiorari Granted, No. 29,997,
Sept. 21, 2006.

Simons & Slattery, LLP, Thomas A. Simons, IV, Daniel H. Friedman, Faith Kalman Reyes, Santa Fe, NM, for Appellant.

Sutin, Thayer & Browne, P.C., Germaine R. Chappelle, A. Kyle Harwood, Assistant City Attorney, Santa Fe, NM, for Appellee.

Office of the State Engineer, DL Sanders, Chief Counsel, Arianne Singer, Special Assistant Attorney General, Santa Fe, NM, for Amicus Curiae–John R. D'Antonio, Jr., NM, State Engineer.

## OPINION

FRY, Judge.

{1} This case presents us with procedural and substantive issues almost identical to those recently addressed by this Court in *Smith v. City of Santa Fe*, 2006–NMCA–048, 139 N.M. 410, 133 P.3d 866, *cert. granted*, 2006–NMCERT–004, 139 N.M. 429, 134 P.3d 120. For the reasons set forth in *Smith*, we affirm the district court's determination that as a matter of law the City of Santa Fe (City) had the authority to prohibit Plaintiff from drilling a well that was previously approved by the Office of the State Engineer (OSE). We also consider an issue that was not raised in *Smith* and hold that the applicable City ordinance limiting the drilling of domestic wells within the City limits was valid in light of NMSA 1978, § 3–53–1.1 (2001), which was not yet in effect at the time the facts occurred in *Smith*. Finally, we decline to consider whether any language in *Smith* inappropriately limits the authority of the State Engineer (SE) because resolution of the issues in this case does not require us to consider the extent of the SE's authority over domestic wells.

## I. BACKGROUND

{2} The parties do not dispute any material facts. The City became a home rule charter municipality in 1997. In 1999, the City Council passed Ordinance No.1999–3, § 1, entitled "Regulation of New Domestic Wells" and codified at Santa Fe, N.M., Code, ch. XXV, § 1.10 (1999) ("1999 Ordinance"). This ordinance provided that "[a]ll domestic well applications within the city's municipal water service area" submitted to the OSE "shall be denied if the applicant's property boundary is within two hundred feet (200′) of a water distribution main." In practice, a person wanting to drill a domestic well within the City limits would apply to the OSE for a permit and the OSE would inform the City when the permit was issued. The City would then inform the applicant that authorization from the City was needed and that the 1999 Ordinance prohibited the drilling of domestic wells if the boundary of the applicable property is within 200 feet of a City water distribution line.

{3} Pursuant to NMSA 1978, §§ 72–12–1 and 72–12–1.1 (2003),[1] Plaintiff applied for a domestic well permit from the OSE and, on September 24, 2003, Plaintiff received the permit to drill a domestic well on her property. The OSE notified the City of the permit and that the well might fall within the boundaries of the area covered by the 1999 Ordinance. On September 28 or 29, 2003, Plaintiff received notice from the City regarding the provisions of the 1999 Ordinance. The City informed her that she was required to obtain city authorization because the boundary of Plaintiff's property was located within 200 feet of the City's water distribution lines.

{4} Plaintiff never requested authorization from the City but, on March 3, 2004, over five months after receiving the City's notice, Plaintiff proceeded to drill the well. The City notified Plaintiff that drilling should stop and Plaintiff applied for a restraining order. On March 5, 2004, the parties entered into a stipulated agreement, which allowed Plaintiff to complete drilling of the well but forbade her from pumping or using any water until the court rendered a decision on whether Plaintiff had a right to drill the well.

{5} Even though the City informed Plaintiff that she needed the City's authorization to drill a well and that she was bound by the

---

1. In 2003, Section 72–12–1 was amended. What was formerly contained in Section 72–12–1(A) was recodified as Section 72–12–1.1. The recodification did not change the language relating to domestic wells and both parties cite to Section 72–12–1 for information actually set forth in Section 72–12–1.1. In the interest of clarity, we will do the same.

1999 Ordinance, Plaintiff did not attempt to appeal this decision through any administrative proceeding but instead filed an amended complaint for declaratory relief, asking the district court to declare that the City has no authority to prohibit her from drilling a well on her property. After a hearing on the parties' cross motions for summary judgment, the district court granted the City's motion and denied Plaintiff's motion. Plaintiff appeals this ruling.

## II. DISCUSSION

### A. Jurisdiction

{6} As in *Smith*, the City argues that the district court had no jurisdiction to consider the complaint for a declaratory judgment because Plaintiff failed to exhaust her administrative remedies by not applying for a drilling permit. Based upon our analysis in *Smith*, we hold that we need not decide this issue because it will make no difference to the outcome of this appeal. *Smith*, 2006–NMCA–048, ¶ 5, 139 N.M. 410, 133 P.3d 866. As discussed in greater detail in *Smith*, we observe that our case law suggests that an ordinance may be challenged by declaratory action, as well as by administrative appeal. *See id.; Pan Am. Petroleum Corp. v. El Paso Natural Gas Co.*, 77 N.M. 481, 487, 424 P.2d 397, 401 (1966) (holding that an action for declaratory judgment is not barred because the plaintiff failed to exhaust administrative remedies if the question is one of law and not fact); *Moriarty Mun. Sch. v. Pub. Sch. Ins. Auth.*, 2001–NMCA–096, ¶¶ 34–37, 131 N.M. 180, 34 P.3d 124 (holding that the school could sue the insurance authority in contract, even though it failed to timely file a petition for writ of certiorari under Rule 1–075 NMRA); *cf. Grand Lodge of Ancient & Accepted Masons of N.M. v. Taxation & Revenue Dep't*, 106 N.M. 179, 181, 740 P.2d 1163, 1165 (Ct.App.1987) (concluding that declaratory judgment action is not available when there is a complete, *statutory* remedy, "obviously intended to be exclusive"). We assume, without deciding, that the district court had jurisdiction to entertain Plaintiffs' declaratory judgment action and proceed to the merits of this case. *See Smith*, 2006–NMCA–048, ¶ 5, 139 N.M. 410, 133 P.3d 866.

### B. Validity of the Ordinance

{7} The district court found as a matter of law that the City's home rule powers provide the requisite authority for enacting the 1999 Ordinance. Plaintiff disagrees and contends that the City's authority is expressly or implicitly denied or preempted by state law.

### 1. Standard of Review.

{8} Summary judgment is reviewed de novo. *McGarry v. Scott*, 2003–NMSC–016, ¶ 5, 134 N.M. 32, 72 P.3d 608. In the present case, we must determine whether the City had authority to enact an ordinance pursuant to its home rule status; this requires interpretation of a constitutional amendment and statutes, both questions of law, which we review de novo. *Smith*, 2006–NMCA–048, ¶ 7, 139 N.M. 410, 133 P.3d 866; *New Mexicans for Free Enter. v. City of Santa Fe*, 2006–NMCA–007, ¶ 11, 138 N.M. 785, 126 P.3d 1149.

### 2. The City had the authority to enact the 1999 Ordinance pursuant to its status as a home rule municipality.

{9} Plaintiff contends that the City did not have the authority to enact the 1999 Ordinance under its power as a home rule municipality. The New Mexico Constitution provides home rule municipalities with the right to "exercise all legislative powers ... not expressly denied by general law or charter." N.M. const. art. X, § 6(D); *see Smith*, 2006–NMCA–048, ¶ 8, 139 N.M. 410, 133 P.3d 866. In *Smith*, we observed that "[l]imitations on home rule authority are evaluated in a two-step process[:]" (1) whether the State law is a general law in that it "applies generally throughout the state, relates to a matter of statewide concern, and impacts the inhabitants across the entire state"; and (2) "whether the general law expressly denies the City's power to prohibit the drilling of domestic wells permitted by the OSE." *Smith*, 2006–NMCA–048, ¶¶ 9–10, 139 N.M. 410, 133 P.3d 866 (internal quotation marks and citation omitted). We then concluded that Section 72–12–1 is a general law. *Id.* ¶ 9. We also concluded that Section 72–12–1 neither expressly nor implicitly de-

nies the City's power to prohibit the drilling of a domestic well already permitted by the OSE. *Id.* ¶¶ 11–26.

{10} Plaintiff presents many of the same arguments that were raised by the plaintiffs in *Smith,* contending that Section 72–12–1 expressly and implicitly preempts the City's authority to prohibit the drilling of domestic wells. She argues that: (1) the SE's approval in issuing the drilling permit preempts the City from imposing more restrictive requirements by ordinance; (2) the approval by the SE in the permit is inconsistent with the City's later denial of authorization to drill; and (3) municipal authority to prohibit domestic wells is implicitly preempted because the 1999 Ordinance conflicts with the purposes of the statute and frustrates or violates established public policy. We disagree. *See Smith,* 2006–NMCA–048, ¶¶ 11–20, 139 N.M. 410, 133 P.3d 866. In her response opposing the OSE's amicus brief, Plaintiff invites us to reconsider our holdings in *Smith.* We decline to do so.

■ {11} Plaintiff also contends that even if we refuse to reconsider our decision in *Smith,* we must consider whether the 1999 Ordinance directly conflicts with state law because that issue was not raised in *Smith.* She argues that the permit by the SE to drill at the very site where the City prohibits drilling presents her with conflicting directives. Initially, we note that the issue of whether the prohibition was inconsistent with the language of Section 72–12–1 and inconsistent with the permit issued by the OSE was raised and rejected by this Court in *Smith. Id.* ¶¶ 11–16. Furthermore, we are not persuaded that the SE's approval of a drilling site is inconsistent with the City's later denial of authorization to drill. The provisions contained in the SE's permit do not conflict with the provisions of the 1999 Ordinance because the SE permit merely allows drilling; it does not order it. Under its home rule authority, the City is entitled to enact stricter requirements by prohibiting the drilling that the OSE permit allows but does not order or require. *See New Mexicans for Free Enter.,* 2006–NMCA–007, ¶ 39, 138 N.M. 785, 126 P.3d 1149 (observing that an ordinance which is more strict than state law,

is effective "unless it conflicts with state law"); *Gould v. Santa Fe County,* 2001–NMCA–107, ¶¶ 18–19, 131 N.M. 405, 37 P.3d 122 (same); *Incorporated County of Los Alamos v. Montoya,* 108 N.M. 361, 365, 772 P.2d 891, 895 (Ct.App.1989) (holding that a DWI ordinance was not invalid when it provided greater restrictions than those provided under state law).

{12} In support of her argument that the City's denial is inconsistent with state law and the OSE permit, Plaintiff argues that the City cannot rely on the provisions of Section H of the permit. Section H of the permit subjects Plaintiff's right to drill to "such limitations as may be imposed by the courts or by lawful municipal and county ordinances which are more restrictive than applicable State Engineer Regulations." She concludes that the language of Section H only recognizes the municipality's authority to limit the amount and uses of water permitted, but this limitation does not authorize the outright ban of drilling. We are unpersuaded for the following reasons. First, the City's authorization to prohibit drilling comes from its power as a home rule municipality, not from a specific grant of authority in Section H or in any other section of the permit. Furthermore, we rejected the plaintiffs' similar argument in *Smith* and held that "the plain meaning of the permit language of approval, read together with Condition H, is clear and unambiguous—the applicant may drill a well if he or she is not limited by a more restrictive municipal ordinance." *Smith,* 2006–NMCA–048, ¶ 16, 139 N.M. 410, 133 P.3d 866.

{13} Plaintiff cites to *Blue Circle Cement, Inc. v. Bd. of County Comm'rs,* 27 F.3d 1499, 1508 (10th Cir.1994), to support her contention that a local authority cannot impose a total ban of an activity that is "otherwise encouraged" by the statute. We are unpersuaded by the holding in *Blue Circle Cement, Inc.* because, as discussed above, the SE's action in granting the permit allows, but does not encourage or order, the drilling of a domestic well. In contrast, the court in *Blue Circle Cement, Inc.,* was considering whether a local authority could ban disposal of hazardous waste despite federal law that included a preference for treatment of such waste.

*See id.* at 1506–08 (discussing the federal Resource Conservation and Recovery Act (RCRA) and its goals of developing improved solid waste management techniques to facilitate resource recovery and conservation and RCRA's preference for treatment rather than land disposal and how those goals and preferences may be impermissibly frustrated if local authorities are allowed to entirely ban the disposal of hazardous wastes).

{14} We disagree with Plaintiff's contention that the SE did not have the authority to issue the conditional language set forth in Section H of the permit nor to delegate authority to the City to regulate the use and amount of water. The SE is not delegating its authority over the beneficial use of water, and the 1999 Ordinance addresses purely local concerns that are different from those addressed by the state law *See Smith,* 2006–NMCA–048, ¶¶ 18–25, 139 N.M. 410, 133 P.3d 866.

{15} In light of the City's authority pursuant to its status as a home rule municipality, we need not address Plaintiff's argument that the City was not expressly authorized to prohibit the drilling of a well pursuant to NMSA 1978, §§ 3–53–1, to –2 (1965).

**3. The enactment of Section 3–53–1.1 did not preempt the City's authority to enforce the 1999 Ordinance.**

{16} We now turn to Plaintiff's contentions that were not addressed in *Smith.* First, Plaintiff contends that the enactment of Section 3–53–1.1 warrants a different result from the result in *Smith.* We disagree.

{17} Subsection 3–53–1.1(A) authorizes a municipality, by ordinance, to "restrict the drilling of new domestic water wells … if the property line of the applicant is within three hundred feet of the municipal water distribution lines and the property is located within the exterior boundaries of the municipality." It is undisputed that at the time Plaintiff drilled her well, the City had not yet enacted an amended ordinance directly tracking the language of Subsection 3–53–1.1(A); the amended ordinance was finally adopted on March 31, 2004.

■ {18} Plaintiff claims that Subsection 3–53–1.1(A) negates the City's authority to enforce the 1999 Ordinance in two ways. Plaintiff contends that by granting authority to municipalities in Section 3–53–1.1, the legislature indicated that municipalities were without any authority before the statute was enacted. We disagree. As previously discussed, the City under its home rule authority had all authority that was not expressly reserved to the State. The lack of a statute granting this authority is therefore irrelevant. *See New Mexicans for Free Enter.,* 2006–NMCA–007, ¶ 16, 138 N.M. 785, 126 P.3d 1149 (recognizing that home rule status confers "remarkably broad powers" on home rule municipalities and is intended to "provide chartered municipalities with the utmost ability to take policymaking initiative"); *Apodaca v. Wilson,* 86 N.M. 516, 521, 525 P.2d 876, 881 (1974) (observing that, "before the adoption of the home rule amendment," municipalities had to identify the authority to act but, after adoption of the amendment, municipalities need only look to the Constitution and general laws to ascertain whether any specific power is denied them (internal quotation marks and citation omitted)).

{19} Recognizing that any repeal by implication is disfavored, *see Clothier v. Lopez,* 103 N.M. 593, 595, 711 P.2d 870, 872 (1985), we are not convinced that the recognition of municipal authority to prohibit drilling in Section 3–53–1.1 warrants a finding that home rule municipalities were without such authority before the right was specifically recognized by statute. To the contrary, passage of Section 3–53–1.1 confirms, rather than invalidates, the City's prior authority to regulate domestic wells, although it also imposes limits to that authority by requiring compliance with any reservations or conditions specified in the statute.

{20} Second, Plaintiff relies on the restrictions and limitations contained in Section 3–53–1.1 and argues that the 1999 Ordinance is invalid because it does not include all of these statutory protections and limitations. *See* § 3–53–1.1(A)–(G). She contends that the City's failure to enact an ordinance in "compliance" with the restrictions contained in Section 3–53–1.1 by the time Plaintiff drilled

her well is "fatal" to the City's assertion of authority to prohibit the well. Again, we disagree. We agree that Section 3–53–1.1 conditions a municipality's power to restrict well-drilling based on fulfillment of certain conditions. *See id.* However, there is nothing to suggest that the City violated any of these provisions in applying the 1999 Ordinance to deny Plaintiff permission to drill a domestic well.

{21} Our reading of Section 3–53–1.1 indicates that it allows adoption of an ordinance to "restrict the drilling of new domestic water wells." *See* § 3–53–1.1(A). The City had an ordinance, albeit a very basic one, which restricted the drilling of domestic wells "if the applicant's property boundary is within two hundred feet (200′) of a water distribution main." Therefore, the 1999 Ordinance complies with the requirements of Section 3–53–1.1(A).

{22} Turning to the remaining conditions set forth in Section 3–53–1.1(B) through (G), there is no evidence that the City failed to comply with the requirements of the statute. In satisfaction of the prohibitions contained in Subsections 3–53–1.1(B) and (C), there is no suggestion that it would have cost Plaintiff more to connect to the City water line than to drill a well and no indication that Plaintiff was not provided with City water within ninety days. To the contrary, Plaintiff was already connected to the City line and receiving water services at the time she sought to drill the well. Furthermore, the City required Plaintiff to obtain the City's permission to drill the well after obtaining a permit from the SE but, as Plaintiff never applied for a permit and refused to apply for City authorization, there is no evidence that the City failed to act within the requisite amount of time on her "application" or failed to notify the SE of the denial of the permit or authorization. *See* § 3–53.1.1(F)–(G). Finally, the City complied with Subsection 3–53–1.1(D) because it filed a copy of its 1999 Ordinance with the SE. Based on the foregoing, we agree with the district court that the 1999 Ordinance is within the parameters of Section 3–53–1.1, and there is nothing to suggest that the City violated the statute. *Cf. Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs,* 2004–NMCA–096, ¶ 15, 136 N.M. 247, 96 P.3d 1167 (recognizing that the "law does not require that an ordinance precisely track the enabling statute, to be authorized"), *aff'd,* 2005–NMSC–023, 138 N.M. 126, 117 P.3d 932.

{23} Moreover, we disagree with Plaintiff's characterization of Section 3–53–1.1 as requiring a "specific method to be followed" and are unpersuaded by her citation to *City of Hobbs v. Biswell,* 81 N.M. 778, 782, 473 P.2d 917, 921 (Ct.App.1970) to support her contention. In *City of Hobbs,* the Court was considering whether, in adopting an ordinance, the city complied with any procedural requirements set forth in the authorizing statute. *Id.* (holding that an ordinance regulating pawn brokers was properly adopted because the adopting process did not fail to meet any procedural requirements contained in the authorizing statute). There is nothing in Section 3–53–1.1 specifying procedural requirements that must be satisfied by a municipality when adopting an ordinance regulating the drilling of domestic wells. Section 3–53–1.1 does provide conditions that a municipality must meet before it may deny a property owner permission to drill a domestic well. However, there is no language in the statute requiring that all the conditions be set forth in the ordinance itself and, as discussed above, there is no indication the City failed to meet those conditions when enforcing the 1999 Ordinance.

{24} Finally, Plaintiff contends that the passage of Section 3–53–1.1 undermines this Court's conclusion in *Smith* that municipalities are not precluded by state statute from regulating the use of local wells based on areas of concern such as impact on the depletion of local aquifers or local water quality. *Smith,* 2006–NMCA–048, ¶ 20, 139 N.M. 410, 133 P.3d 866. Plaintiff notes that under Section 3–53–1.1, municipalities may only condition well-drilling permits on the well's distance from a municipal water line and the relative cost of the well versus the cost of hook up to the municipality's system. Plaintiff appears correct that Section 3–53–1.1 limits the reasons for which a municipality may deny a domestic well permit. To the extent Plaintiff contends that Section 3–53–1.1 un-

dercuts the interests of a municipality in its local water supply, we disagree. To the contrary, we see the legislature as affirming these interests by conferring on all municipalities, not just home rule municipalities, the power to regulate domestic wells. The fact that the legislature has included some particular rules or preferences does not blunt the force of the statute, which empowers local regulation. These limits do not impact the analysis in this case because the City denied Plaintiff the right to drill a well based on the very criterion set forth in Subsection 3–53–1.1(A): distance from the municipal water line. Therefore, we conclude that the enactment of Section 3–53–1.1 did not invalidate the City's authority to deny Plaintiff permission to drill a well.

## C. Surcharges

{25} Plaintiff further contends that the City cannot impose water surcharges on Plaintiff's use of water. We disagree based upon our holding that the City was authorized to prevent Plaintiff from drilling a domestic well on her property. Without a well, Plaintiff must be served by the city water utility and is subject to the rules and regulations that apply to all utility users, including the surcharges that are imposed pursuant to the City's regulations.

## D. Amicus brief

{26} In *Smith*, this Court characterized Section 72–12–1 as a "notice-oriented mandate[ ]" that was intended to ensure that the OSE is aware of new domestic wells and that the wells are drilled by a qualified person. 2006–NMCA–048, ¶ 18, 139 N.M. 410, 133 P.3d 866. We noted that application to the OSE for a permit results in an automatic and unrestricted permit and that there is no evidence of legislative intent to regulate the use of domestic wells in areas of concern to a municipality, such as depletion of the local aquifers, impact on the quality of the local water, and reliability of the water system. *Id.* ¶¶ 18–20. We then concluded that, "[c]learly, state law and the City's ordinance regarding domestic wells address different areas of concern." *Id.* ¶ 20.

{27} The SE filed an amicus curiae brief. He does not dispute our holding that Section 72–12–1 and the OSE permit do not preempt the City's power to prohibit the drilling of wells when the applicant can be served by the municipal water system. He agrees that a municipality can impose stricter regulations on the use of water than imposed by a permit issued by the SE. However, the SE protests our characterization of Section 72–12–1 as a notice statute, claiming that Section 72–12–1 provides a statutory exception to the notice and publication process that is otherwise required for all other well applicants "in order to provide access to domestic water for households that are not within reach of an established water supply system." In support of his claims, the SE provides an extensive review of the history of water legislation and regulation in New Mexico. He also argues that, even if domestic well permits are automatically issued under Section 72–12–1, he has "both the discretion and perhaps the constitutional obligation to limit such permits by imposing conditions of approval or even refusing to accept the application where he finds existing rights will be impaired or no unappropriated water is available." He notes that only the SE can grant a permit to the extent unappropriated water is available and that any permits are "subject to regulation, administration, and supervision by the State Engineer."

{28} While making no objection to the ultimate holding in *Smith*, the SE asks this Court to revise its opinion in *Smith* so as to clarify the allegedly improper constraints on the SE's authority articulated therein. We decline to address the SE's concerns in this opinion because the underlying facts do not require us to decide whether the *Smith* opinion mischaracterized the authority of the SE. *See City of Sunland Park v. Harris News, Inc.*, 2005–NMCA–128, ¶ 50, 138 N.M. 588, 124 P.3d 566 (noting that an appellate court need not decide an issue that will have no practical effect on the current litigation and would answer only a hypothetical set of circumstances), *cert. granted,* 2005–NMCERT–011, 138 N.M. 587, 124 P.3d 565.

{29} The SE is not arguing that his statutory authority warrants a holding that the

City did not have the power to enact and enforce the 1999 Ordinance. That is the only issue that must be decided in this case. In light of the SE's agreement that his authority over domestic wells does not rise to the level of an express denial of home rule authority to act in this area, we decline to address whether the SE might have authority and discretion beyond that recognized in *Smith*.

## III. CONCLUSION

{30} For the foregoing reasons, we affirm the judgment of the district court.

{31} **IT IS SO ORDERED.**

I CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge.

MICHAEL E. VIGIL, Judge (specially concurring and dissenting).

VIGIL, Judge (specially concurring and dissenting).

{32} For the reasons stated in my specially concurring and dissenting opinion, in *Smith,* I concur only in the result reached and I dissent from assuming without deciding that the district court had jurisdiction to entertain the declaratory judgment action.