2008-NMSC-008

176 P.3d 309

**Maria T. STENNIS, Plaintiff–Petitioner,**

v.

**The CITY OF SANTA FE, Defendant–Respondent.**

**No. 29,997.**

Supreme Court of New Mexico.

Jan. 22, 2008.

**322**

Simons & Slattery, L.L.P., Thomas A. Simons, IV, Faith Lesley Kalman Reyes, Santa Fe, NM, for Petitioner.

Frank D. Katz, City Attorney, Santa Fe, NM, Sutin, Thayer & Browne, P.C., Germaine R. Chappelle, Santa Fe, NM, for Respondent.

D.L. Sanders, Arianne Singer, Santa Fe, NM, for Amicus Curiae Office of the State Engineer.

## OPINION

SERNA, Justice.

{1} On motions for rehearing, the opinion filed October 25, 2007, is withdrawn and the following opinion is substituted in its place. The City of Santa Fe's motion for rehearing is otherwise denied. Maria Stennis's motion for rehearing is likewise denied. The Court, after considering the parties' supplemental briefing, decides, as a matter of law, that the Section 3–53–1.1(E) requirement of obtaining a "permit" from the municipality was duly satisfied by the municipality's 1999 Ordinance, which provided an application process through which the applicant must obtain authorization from the city before drilling a well. Section 3–53–1.1 does not require a municipal ordinance to track its language.

{2} Maria Stennis (Stennis) submitted a domestic well application to the State Engineer (SE)[1] in 2003. The SE approved Stennis's application, which showed that her proposed well might be located within two hundred feet of a City of Santa Fe (the City) water distribution line. Under a local ordinance, the City prohibited all wells within two hundred feet of a water distribution line. Stennis filed a complaint in district court seeking a declaratory judgment that the City did not have the authority to regulate domestic wells by municipal ordinance. On cross-petitions for summary judgment, the district court granted the City's motion and denied Stennis's motion, concluding that Stennis must obtain a City permit before using her domestic well. Stennis appealed to the Court of Appeals, which affirmed in a split decision. *Stennis v. City of Santa Fe*, 2006–NMCA–125, ¶¶ 5, 30, 140 N.M. 517, 143 P.3d 756. We granted certiorari to determine whether the City had the authority to enact a local ordinance governing domestic wells. 2006–NMCERT–009, 140 N.M. 543, 144 P.3d 102.

{3} The facts in this case are very similar to the facts in *Smith v. City of Santa Fe*, 2007–NMSC–055, 142 N.M. 786, 171 P.3d 300. In that case, we determined that the plaintiff could challenge the same ordinance at issue here through a declaratory judgment action, "provided that the declaratory judgment action is not used to circumvent established procedures for seeking judicial review of a municipality's administrative decisions." *Id.* ¶ 1. We also held that the City lawfully enacted this ordinance under its home rule authority. *Id.* ¶ 28 (citing *Smith v. City of Santa Fe*, 2006–NMCA–048, ¶¶ 6–25, 139 N.M. 410, 133 P.3d 866). The instant case differs because, prior to Stennis's application for an SE permit, the Legislature explicitly gave municipalities the authority to regulate domestic wells, provided that municipalities

1. We note that the Court of Appeals used "Office of the State Engineer" and "State Engineer" interchangeably throughout its opinion. *See, e.g., Stennis*, 2006–NMCA–125, ¶¶ 11, 12, 140 N.M. 517, 143 P.3d 756. For purposes of this opinion, however, that distinction is one without a difference. Santa Fe, N.M., Code chapter XXV, section 1.10 (2004) and NMSA 1978, Section 3–53–1.1 (2001) both refer solely to the "State Engineer" and not to the "Office of the State Engineer." Thus, for the sake of consistency, this opinion refers solely to "State Engineer," which should be read to encompass not only the individual but also the Office of the State Engineer.

adhere to certain procedures. *See* NMSA 1978, § 3–53–1.1 (2001). One such procedural requirement is that a municipality must file its ordinance with the SE. Section 3–53–1.1(D). We conclude that Section 3–53–1.1(D)'s filing requirement is determinative of Stennis's case. We further conclude that a question of material fact exists in this case that must be decided by the district court: whether the City had its ordinance on file with the SE before Stennis applied to the SE for her domestic well permit. While the City could provide the other procedural protections in Section 3–53–1.1 without explicitly including them in the ordinance's language, the filing of its ordinance with the SE is mandatory.

{4} Therefore, we remand to the district court to determine whether the City had its ordinance on file with the SE before Stennis applied to the SE for a domestic well permit. If the City filed its ordinance before Stennis applied for her permit, Stennis must submit a domestic well application for the City's authorization and the City must provide her a procedure in accordance with Section 3–53–1.1. If the City did not file its ordinance before Stennis applied for her permit, the City is without authority to regulate Stennis's well and she is permitted to use it.

## I. FACTS

■ {5} The City became a home rule charter municipality[2] in 1998. In 1999, pursuant to its home rule authority, the City Council passed Ordinance No.1999–3, Section 1, entitled "Regulation of New Domestic Wells," codified at Santa Fe, N.M., Code chapter XXV, section 1.10 (1999) [hereinafter "1999 Ordinance"]. This ordinance provided that "[a]ll domestic well applications within the city's municipal water service area" submitted to the SE "shall be denied if the applicant's property boundary is within two hundred feet (200') of a water distribution

main." *Id.* In practice, a person wanting to drill a domestic well within the City limits would apply to the SE for a permit, and the SE would hold these applications for review by City staff. The City would then inform the applicant that the applicant needed City authorization for the well and that the 1999 Ordinance prohibited the drilling of domestic wells if the property boundary was within two hundred feet of a City water distribution line.

{6} Thereafter, in 2001, the Legislature enacted Section 3–53–1.1, which reads, in pertinent part:

> A. A municipality may, *by ordinance*, restrict the drilling of new domestic water wells, except for property zoned agricultural, if the property line of the applicant is within three hundred feet of the municipal water distribution lines and the property is located within the exterior boundaries of the municipality.
>
> . . . .
>
> D. *A municipality shall file with the state engineer its municipal ordinance* restricting the drilling of new domestic water wells.

(Emphasis added.) The 1999 Ordinance remained in effect until March 31, 2004, when the City Council passed an ordinance that tracked the language of Section 3–53–1.1. *Compare* Santa Fe, N.M., Ordinance No.2004–7, § 1, codified at Santa Fe, N.M., Code ch. XXV, § 1.10 (2004) *with* § 3–53–1.1.

{7} Pursuant to NMSA 1978, Sections 72–12–1 and 72–12–1.1 (2003),[3] Stennis applied for a domestic well permit from the SE and, on September 24, 2003, she received a permit to drill a domestic well on her property. The SE notified the City of the permit and explained that the well might fall within the boundaries of the area covered by the 1999 Ordinance. In late September 2003, Stennis

---

**2.** New Mexico Constitution, article X, section 6(D) states: "A municipality which adopts a charter may exercise all legislative powers and perform all functions not expressly denied by general law or charter." Home rule municipalities need not look to the Legislature for a grant of power to act, but need only look for limitations on their power to act. *Apodaca v. Wilson,* 86 N.M. 516, 521, 525 P.2d 876, 881 (1974).

**3.** In 2003, Section 72–12–1 was amended. What was formerly contained in Section 72–12–1(A) (2001) was recodified as Section 72–12–1.1. The recodification did not change the language relating to domestic wells, and both parties cite to Section 72–12–1 for information actually set forth in Section 72–12–1.1.

received notice from the City regarding the provisions of the 1999 Ordinance. The City informed her that she was required to obtain city authorization for the well because the boundary of Stennis's property was located within the city limits.

{8} Stennis never requested authorization from the City, but, on March 3, 2004, over five months after receiving the City's notice, she proceeded to drill her well. The City notified Stennis that drilling should stop, and Stennis applied for a restraining order. On March 5, 2004, the parties entered into a stipulated agreement, which allowed Stennis to complete drilling of the well but forbade her from pumping or using any water until the court rendered a decision on Stennis's right to drill the well.

{9} Even though the City informed Stennis that she needed its authorization to drill a well and that she was bound by the 1999 Ordinance, Stennis did not attempt to challenge this decision through any administrative proceeding. Instead, Stennis filed an amended complaint for declaratory relief, asking the district court to declare that the City had no authority to prohibit the drilling of a domestic well on her property. After a hearing on the parties' cross-motions for summary judgment, the district court granted the City's motion and denied Stennis's motion.

{10} Stennis appealed to the Court of Appeals, which affirmed in a split decision. *Stennis*, 2006–NMCA–125, ¶¶ 1, 5, 140 N.M. 517, 143 P.3d 756. The Court of Appeals held that, as a home rule municipality, the City had the authority to enact the 1999 Ordinance. *Id.* ¶ 11. Furthermore, the Court concluded that Section 3–53–1.1, governing municipal authority over domestic wells, did not preempt the 1999 Ordinance. *Id.* ¶ 24.

{11} Stennis petitioned this Court for certiorari and asked us to determine whether the City was preempted from enacting the 1999 Ordinance regulating domestic wells and whether the City's failure to adopt an ordinance pursuant to Section 3–53–1.1 until after she began drilling her well leaves the City without authority to regulate her well. Our decision in *Smith* answers the first question: the City had the authority to enact the

1999 Ordinance. 2007–NMSC–055, ¶ 27, 142 N.M. 786, 171 P.3d 300. *Smith* also informs our decision on the second issue. We conclude that the Legislature did not intend to negate the City's valid authority to regulate domestic wells. Instead, Section 3–53–1.1 affirms this authority, but requires that the City follow a certain procedure, in particular, the filing of the municipal ordinance with the SE. Section 3–53–1.1(D). Because it is unclear whether the City filed the 1999 Ordinance with the SE, we remand this case for a determination of this fact by the district court. If the City filed the 1999 Ordinance before Stennis applied for her SE permit, she must apply for city authorization. On the other hand, if the City failed to file the 1999 Ordinance in accordance with Section 3–53–1.1(D)'s mandatory requirement, it is without authority to regulate Stennis's well.

## II. STANDARD OF REVIEW

{12} We recently explained the standard of review applied when reviewing a trial court's decision to grant a motion for summary judgment:

An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo. Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment.

*Montgomery v. Lomos Altos, Inc.*, 2007–NMSC–002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (internal quotations and citations omitted). "When reasonable minds would differ, summary judgment is inappropriate." *Martinez v. Metzgar*, 97 N.M. 173, 174, 637 P.2d 1228, 1229 (1981).

{13} The instant case requires us to analyze the interaction between Section 3–53–1.1 and the 1999 Ordinance. Interpretation of municipal ordinances and statutes is a question of law that we review de novo. *See Smith v. Bernalillo County*, 2005–NMSC–012, ¶ 18, 137 N.M. 280, 110 P.3d 496; *State*

*v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

## III. STENNIS COULD CHALLENGE THE 1999 ORDINANCE THROUGH A DECLARATORY JUDGMENT ACTION WITHOUT FIRST APPLYING FOR CITY AUTHORIZATION

{14} The City claims that Stennis lacks standing to bring the underlying declaratory judgment action because she failed to exhaust administrative remedies. The City made an identical argument in *Smith,* 2007–NMSC–055, ¶ 11, 142 N.M. 786, 171 P.3d 300. Therein, we concluded that a declaratory judgment action is an appropriate method for "challenging the constitutionality or validity of local laws or ordinances" when it does not require fact-finding by the administrative agency. *Id.* ¶¶ 14–16. Stennis, like the plaintiffs in *Smith,* "simply asked the district court to determine whether the City's attempt to regulate the permitting of domestic wells within the City's municipal limits was appropriate in light of existing state statutes concerning the regulation of wells." *Id.* ¶ 18. Furthermore, since Stennis never sought a permit from the City, this declaratory judgment action is not an attempt to circumvent administrative appellate procedures. *See id.* ¶ 25. Because Stennis falls under the rule announced in *Smith,* we conclude that she has standing to bring this declaratory judgment action challenging the City's authority to enact the 1999 Ordinance and proceed to address the merits of her claim.

## IV. THE 1999 ORDINANCE WAS A VALID EXERCISE OF THE CITY'S HOME RULE AUTHORITY

{15} Stennis claims that the City did not have the authority to enact the 1999 Ordinance. Our holding in *Smith* is dispositive of the issue and, for that reason, we do not repeat the *Smith* analysis here. *See Smith,* 2007–NMSC–055, ¶¶ 28–29, 142 N.M. 786, 171 P.3d 300. Instead, we reiterate that "the City ha[s] the authority to prohibit the drill-

ing of domestic wells" for "the reasons contained in [*Smith,* 2006–NMCA–048, ¶¶ 6–25, 139 N.M. 410, 133 P.3d 866]." *Id.* ¶ 28.

## V. SECTION 3–53–1.1 DID NOT NEGATE THE 1999 ORDINANCE, SO LONG AS THE CITY FILED THE ORDINANCE WITH THE STATE ENGINEER

{16} Stennis contends that Section 3–53–1.1 invalidates the 1999 Ordinance because the ordinance did not track the statute's language regarding procedural protections. The City counters that Section 3–53–1.1 requires only that it enact an ordinance, which in this case was the 1999 Ordinance, and that the other Section 3–53–1.1 requirements were provided for in its domestic well application procedure. We agree with the City, but conclude that Section 3–53–1.1(D) also specifically required the 1999 Ordinance to be filed with the SE to be effective. Therefore, we remand to the district court to determine this factual issue.

{17} Section 3–53–1.1 and the 1999 Ordinance are distinct provisions. Section 3–53–1.1(A) restricts proposed wells within the municipality's exterior boundaries and within three hundred feet of the distribution line, while the 1999 Ordinance provides for automatic denial of well permit applications within the City's water service area and within two hundred feet of a water distribution line. Section 3–53–1.1(D) required the City to file the 1999 Ordinance with the SE.[4]

{18} In support of Stennis's argument that the 1999 Ordinance should track the language of Section 3–53–1.1, Stennis brings *City of Hobbs v. Biswell* to our attention. 81 N.M. 778, 473 P.2d 917 (Ct.App.1970). Therein, the defendant challenged a municipal ordinance regulating pawnbrokers, arguing, in part, that the ordinance was invalid because it did not contain a general welfare clause recital. *Id.* at 779, 781, 473 P.2d at 918, 920. While the Court of Appeals ultimately held that the ordinance did not require such a recital, it observed that " 'the direction of definite and certain method of

---

4. Other Section 3–53–1.1 subsections are not pertinent to this case because they deal with procedures applicable after a landowner has ap-

plied for municipal authorization, which Stennis has never done. *See, e.g.,* §§ 3–53–1.1(B), (C), (F), (G).

procedure in the grant of power to the municipality excludes all other methods by implication of law.'" *Id.* at 782, 473 P.2d at 921 (quoting *City of Clovis v. Crain,* 68 N.M. 10, 13, 357 P.2d 667, 669 (1960)). Stennis suggests that Section 3–53–1.1 sets forth the specific procedure that the City must follow in processing domestic well applications. While Section 3–53–1.1 does set forth the procedure the City must follow in reviewing domestic well applications, we agree with the Court of Appeals that nothing in the statute requires the City ordinance's *language* to track the statute's language. *See Stennis,* 2006–NMCA–125, ¶ 20, 140 N.M. 517, 143 P.3d 756 ("Plaintiff ... argues that the 1999 Ordinance is invalid because it does not include all of [Section 3–53–1.1's] statutory protections and limitations.... [W]e disagree.").

■ {19} Section 3–53–1.1(A) does not require a municipal ordinance to track its language. Instead, it allows a municipality to enact an ordinance that will "restrict the drilling of new domestic water wells ... if the property line of the applicant is within three hundred feet of the municipal water distribution lines." The plain language of Section 3–53–1.1 accommodates the creation of municipal ordinances related to the regulation domestic wells; it does not require that those ordinances track its language, and we will not read such an additional requirement into the statute. *See Cobb v. N.M. State Canvassing Bd.,* 2006–NMSC–034, ¶ 34, 140 N.M. 77, 140 P.3d 498 ("[W]e will not read into a statute or ordinance language which is not there, particularly if it makes sense as written.") (quoting *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236). As the Court of Appeals concluded, Section 3–53–1.1 did not invalidate the 1999 Ordinance because Section 3–53–1.1 "allows adoption of an ordinance to 'restrict the drilling of new domestic water wells.' The City had an ordinance, albeit a very basic one, which restricted the drilling of domestic wells." *Stennis,* 2006–NMCA–125, ¶ 21, 140 N.M. 517, 143 P.3d 756 (quoting § 3–53–1.1(A)).

{20} Stennis makes much of the fact that the City acknowledged that it needed to incorporate the Section 3–53–1.1 restrictions into its ordinance and that it did so in 2004. Regardless of what the City believed that it needed to do, the plain language of Section 3–53–1.1 does not require municipal ordinances to track its language. Stennis further argues that the passage of Section 3–53–1.1 suggests no municipality had the authority to prohibit domestic wells before its enactment. The language of Section 3–53–1.1 suggests otherwise.

■ {21} Under New Mexico law, "a municipality may adopt ordinances or resolutions not inconsistent with" state law. NMSA 1978, § 3–17–1 (1965, as amended through 1993). A municipal ordinance does not conflict with state law unless "'the ordinance permits an act the general law prohibits, or vice versa.'" *Bd. of Comm'rs of Rio Arriba County v. Greacen,* 2000–NMSC–016, ¶ 16, 129 N.M. 177, 3 P.3d 672 (quoting *State ex rel. Coffin v. McCall,* 58 N.M. 534, 537, 273 P.2d 642, 644 (1954)). Our Court of Appeals has further explained that "an ordinance will conflict with state law when state law specifically allows certain activities or is of such a character that local prohibitions on those activities would be inconsistent with or antagonistic to that state law or policy." *New Mexicans for Free Enter. v. City of Santa Fe,* 2006–NMCA–007, ¶ 43, 138 N.M. 785, 126 P.3d 1149. We presume that the Legislature was aware of this legal principle and did not intend to invalidate the 1999 Ordinance when it passed Section 3–53–1.1. *See Benavidez v. Sierra Blanca Motors,* 122 N.M. 209, 213, 922 P.2d 1205, 1209 (1996) ("When interpreting a statute ... [w]e presume that the Legislature is well informed regarding existing statutory and common law and does not intend to enact a nullity.").

■ {22} The 1999 Ordinance is neither inconsistent with nor antagonistic to Section 3–53–1.1 because it restricts the same activities as Section 3–53–1.1 but does so in a less restrictive manner. *See McCall,* 58 N.M. at 538, 273 P.2d at 644 (concluding that an ordinance, which was less restrictive than the corresponding state statute, "merely complement[ed] the statute and [was] nowhere antagonistic therewith"). The Legislature likely had the 1999 Ordinance in mind when it enacted Section 3–53–1.1 because Section 3–

53–1.1 is more restrictive than the 1999 Ordinance: the 1999 Ordinance prohibited drilling within two hundred feet of a water distribution line, while Section 3–53–1.1 prohibits domestic wells within three hundred feet. Because the 1999 Ordinance was less restrictive than Section 3–53–1.1 and was not in conflict with it, we hold that the 1999 Ordinance was still effective after the enactment of Section 3–53–1.1.

{23} Our determination that Section 3–53–1.1 did not require the 1999 Ordinance to track the statute's language does not end our inquiry into whether the City could enforce its ordinance against Stennis. Section 3–53–1.1(D) clearly mandates that the City file the 1999 Ordinance with the SE. On this issue, there appears to be a question of material fact as to whether the City actually did so. Stennis presented evidence from her fiancé that he went to the SE, obtained a copy of a letter and attached form prepared by the City and filed with the SE, and was told by an SE employee that the City had not filed any ordinance with the SE. The City, on the other hand, presented evidence that the SE helped draft a procedure to aid in the City's regulation of domestic wells and referred all domestic well applications within the 1999 Ordinance to the City.

{24} Stennis never availed herself of the City's domestic well application procedure, and, under this record, we cannot determine whether the City filed the 1999 Ordinance with the SE. The Court of Appeals, nonetheless, proceeded to analyze whether the City had failed to comply with the requirements of the statute. *See Stennis*, 2006–NMCA–125, ¶ 22, 140 N.M. 517, 143 P.3d 756. We conclude, however, that the more appropriate result is for the district court to determine on remand whether the City filed the 1999 Ordinance with the SE. If the City filed the 1999 Ordinance with the SE before Stennis applied for her domestic well permit, Stennis must file for city authorization and the City must provide her the procedural protections required by Section 3–53–1.1. If the City did not file the 1999 Ordinance with the SE before Stennis applied for her domestic well permit, then the City failed to comply with the Section 3–53–1.1(D) requirement and cannot validly regulate Stennis's well.

{25} Based on our holding, we decline to address whether Stennis is subject to water use surcharges. If the district court determines that the City can lawfully prohibit Stennis's well, then she will remain a customer of the water utility and utility surcharges will apply to her. If the district court decides that the City did not have a valid ordinance and Stennis is no longer served by the city water utility, the surcharges will not apply.

## VI. CONCLUSION

{26} Stennis had standing to bring the underlying declaratory judgment action against the City because she did not attempt to circumvent established procedures for seeking judicial review of the City's administrative decisions. The 1999 Ordinance was a valid exercise of the City's home rule authority and remained effective after Section 3–53–1.1 entered into force because (1) Section 3–53–1.1 does not require an ordinance to track its language and (2) the 1999 Ordinance could be applied to follow the procedural requirements of Section 3–53–1.1. So holding does not dispose of this case, and thus we remand to the district court to decide the following issue of material fact: whether the City filed the 1999 Ordinance as required by Section 3–53–1.1(D). Upon such determination, the district court shall issue an order consistent with this opinion.

{27} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, Justice, and JAMES J. WECHSLER, Judge (sitting by designation).