**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-108**

**Filing Date: September 23, 2010**

**Docket No. 28,985**

**MARIA T. STENNIS,**

 **Plaintiff-Appellant,**

**v.**

**CITY OF SANTA FE,**

 **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Simons & Slattery, LLP
Thomas A. Simons, IV
Santa Fe, NM

for Appellant

City of Santa Fe
Frank D. Katz, City Attorney
Santa Fe, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

**{1}** In *Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 4, 143 N.M. 320, 176 P.3d 309, the Supreme Court held that a municipality has valid authority to regulate domestic wells and remanded this case to the district court for additional findings of fact. Specifically, the district court was ordered to determine whether the actions of Defendant City of Santa Fe (City) conformed with NMSA 1978, Section 3-53-1.1(D) (2001), which requires

1

municipalities to file ordinances restricting the drilling of domestic water wells with the Office of the State Engineer (OSE). The district court concluded that although the City never actually filed a copy of its ordinance with the OSE, it substantially complied with Section 3-53-1.1(D) by providing actual notice in the form of faxes and letters to OSE personnel.

**{2}** The sole issue on appeal is whether Section 3-53-1.1(D) allows for substantial compliance. We hold that it does not and reverse the order of the district court.

## BACKGROUND

**{3}** In 1999, the City passed an ordinance restricting the drilling of domestic water wells. *Stennis*, 2008-NMSC-008, ¶ 5. Titled, "Regulation of New Domestic Wells," the ordinance prohibited drilling on property with a property boundary within two-hundred feet of a water distribution main. *Id*. Two years later, in 2001, the state Legislature passed Section 3-53-1.1(D), which, in allowing municipalities to restrict domestic well drilling, provided that "[a] municipality shall file with the [OSE] its municipal ordinance restricting the drilling of new domestic water wells." *Stennis*, 2008-NMSC-008, ¶ 6 (emphasis omitted). Thereafter, the City and the OSE engaged in an informal process in which the OSE would issue well permits to qualifying applicants and then periodically notify the City of those applicants who also required permits under the city ordinance.

**{4}** Plaintiff Maria T. Stennis (Stennis) is one such applicant. In 2003 she applied for and was issued a well permit from the OSE. As Stennis's well fell within the city limits, the OSE notified the City, which then informed Stennis of its own internal permit requirement. *Id.* ¶ 7. Stennis chose to challenge the City's authority to enact the ordinance and proceeded to dig the well under her OSE permit. *Id*. ¶ 8. Instead of pursuing her challenge within the municipal administrative process, she filed a declaratory judgment action seeking to invalidate the ordinance. The district court found her claim without merit and ruled in favor of the City on its motion for summary judgment. *Id*. ¶ 9.

**{5}** On appeal, this Court affirmed, assuming without deciding that declaratory judgment was available to Stennis. *Stennis v. City of Santa Fe*, 2006-NMCA-125, ¶ 6, 140 N.M. 517, 143 P.3d 756. This Court also held that the City possessed the power, through its ordinance, to regulate domestic wells. We stated that "the City complied with Subsection 3-53-1.1(D) because it filed a copy of its 1999 Ordinance with the [OSE] . . . and there is nothing to suggest that the City violated the statute." *Stennis*, 2006-NMCA-125, ¶ 22. Addressing Stennis's assertion that Section 3-53-1.1 requires a specific method of enactment and enforcement, we indicated that Section 3-53-1.1 has no "procedural requirements that must be satisfied by a municipality when adopting an ordinance regulating the drilling of domestic wells." *Stennis*, 2006-NMCA-125, ¶ 23. Rather, we held that no evidence indicated that the City failed to meet any of the statutory conditions. *Id.*

**{6}** Taking certiorari, the Supreme Court held that Stennis had a right to challenge the

ordinance with a declaratory judgment action, *Stennis*, 2008-NMSC-008, ¶ 14, and that the City's ordinance was a valid exercise of its home rule authority. *Id.* ¶ 15. The Court immediately concluded, however, that "[i]f the City did not file its ordinance before Stennis applied for her permit, the City is without authority to regulate Stennis's well and she is permitted to use it." *Id.* ¶ 4. Disagreeing with this Court's opinion, the Supreme Court held, "Section 3-53-1.1(D) clearly mandates that the City file the 1999 Ordinance with the [OSE]." *Stennis*, 2008-NMSC-008, ¶ 23. Citing insufficient facts, however, the Court held that genuine issues of material fact required the district court to consider "whether the City filed the 1999 Ordinance with the [OSE]." *Id.* ¶ 24. The Court held:

> If the City filed the 1999 Ordinance with the [OSE] before Stennis applied for her domestic well permit, Stennis must file for city authorization and the City must provide her the procedural protections required by Section 3-53-1.1. *If the City did not file the 1999 Ordinance with the [OSE] before Stennis applied for her domestic well permit, then the City failed to comply with the Section 3-53-1.1(D) requirement and cannot validly regulate Stennis's well.*

*Stennis*, 2008-NMSC-008, ¶ 24 (emphasis added).

**{7}** After holding an evidentiary hearing on remand, the district court answered that question and found that the ordinance was "not filed with, or sent to, the [OSE]." Taking a step around home plate, however, it also found that the OSE had actual notice of the ordinance, its content, and substance because the City provided actual notice of the ordinance to the OSE in early 1999. In light of this finding, in its order and final judgment on remand, the district court decided that "because the City substantially complied with the statutory requirement in . . . Section 3-53-1.1[(D)] before . . . Stennis applied to the [OSE] for her domestic well permit, under the Supreme Court's opinion . . . Stennis was required to apply for City authorization."

**{8}** Stennis appeals again. She argues that simply providing notice of the ordinance's language is insufficient to satisfy Section 3-53-1.1(D), which requires filing of the actual ordinance. *See id.*; *see also* NMSA 1978, § 3-17-5(A) (1965) (requiring an ordinance to be "authenticated by the signature of the presiding officer of the governing body and the municipal clerk"). Furthermore, she argues that even if Section 3-53-1.1(D) permits substantial compliance, the City's actions were insufficient to meet that standard. In light of our Supreme Court's opinion in this matter, we conclude that Section 3-53-1.1 requires strict compliance with the statute. Accordingly, we do not analyze whether the City substantially complied.

**DISCUSSION**

**{9}** While strict compliance is certainly not necessary in all situations, a statute's mandatory language cannot be lightly dismissed because "many legislative goals require strict compliance." *Green Valley Mobile Home Park v. Mulvaney*, 1996-NMSC-037, ¶ 11,

3

121 N.M. 817, 918 P.2d 1317. Strict compliance means that the statutory provision at issue must be followed precisely. *See Cochrell v. Mitchell*, 2003-NMCA-094, ¶ 17, 134 N.M. 180, 75 P.3d 396 (finding strict compliance requires nothing less than "letter-perfect" performance). Substantial compliance, on the other hand, recognizes the reality that legislatures cannot predict all possible applications when drafting a statute. *See also Brown v. Trujillo*, 2004-NMCA-040, ¶ 18, 135 N.M. 365, 88 P.3d 881 (refusing to apply substantial compliance because of the absence of an unanticipated contingency); *see also Lane v. Lane*, 1996-NMCA-023, ¶ 17, *cert. denied*, 121 N.M. 414, 912 P.2d 290 ("The [L]egislature, as with anyone who issues an order, cannot anticipate every contingency."). Thus, it sometimes happens that a party's actions satisfy the will of the Legislature despite that party's clear failure to comply with a statute's mandatory language. *See Green Valley*, 1996-NMSC-037, ¶ 10; *Brown*, 2004-NMCA-040, ¶ 13. "[B]lind adherence to statutory language does not always lead to a just result[.]" *Green Valley*, 1996-NMSC-037, ¶ 10 (citation omitted). Nor should courts elevate form over function. *Id.* Accordingly, because the outcome of this case turns the application of our Supreme Court's previous opinion in this case and upon legislative intent, we apply a de novo standard of review. *Stennis*, 2008-NMSC-008, ¶ 13 ("Interpretation of municipal ordinances and statutes is a question of law that we review de novo.").

**{10}** Our courts have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent. *See Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 27, 127 N.M. 120, 978 P.2d 327. Furthermore, unless the Legislature clearly expresses a contrary intent, we are to give statutory words "their ordinary meaning" and are prohibited from reading "into a statute . . . language which is not there, particularly if it makes sense as written." *Id.* (internal quotation marks and citation omitted); *see also Lion's Gate Water v. D'Antonio*, 2009-NMSC-057, ¶ 23, 147 N.M. 523, 226 P.3d 622 ("When a statute is clear and unambiguous, we interpret it as written."). We must construe statutes "in the most beneficial way of which their language is susceptible to prevent absurdity, hardships or injustice, to favor public convenience, and to oppose all prejudice to public interests." *City Comm'n of Albuquerque v. State ex rel. Nichols*, 75 N.M. 438, 445, 405 P.2d 924, 928 (1965). The City concedes it failed to comply with the filing requirement of Section 3-53-1.1(D) and urges us to regard as appropriate the district court's acceptance of substantial compliance. Unfortunately, under the plain meaning rule, the very language with which the City failed to comply most completely expresses the will of the Legislature. For this reason, although we look first to the plain language of Section 3-53-1.1(D) itself, we must also look to the other provisions of the statute to determine whether they express a legislative intent that might override the plain language of Section 3-53-1.1(D) and allow for substantial compliance. *See Martinez v. Sedillo*, 2005-NMCA-029, ¶ 9, 137 N.M. 103, 107 P.3d 543 (observing that courts should consider "all provisions of a statute" when discerning legislative intent). In its entirety, Section 3-53-1.1 provides:

> A. A municipality may, by ordinance, restrict the drilling of new domestic water wells, except for property zoned agricultural, if the property line of the applicant is within three hundred feet of the municipal water

4

distribution lines and the property is located within the exterior boundaries of the municipality.

B.     No municipality may deny authorization for a new domestic water well permit to an applicant if the total cost to the applicant of extending the municipal water distribution line, meter and hook-up to the applicant's residence exceeds the cost of drilling a new domestic water well.

C.     A municipality that fails to authorize the drilling of a new domestic water well shall provide domestic water service within ninety days to the property owner under the municipal water provider's usual and customary charges and rate schedules.

D.     A municipality *shall file* with the [OSE] its municipal *ordinance* restricting the drilling of new domestic water wells.

E.     An applicant for a domestic water well located within the exterior boundaries of a municipality with a new domestic water well drilling ordinance shall obtain a permit to drill the well from the municipality subsequent to the [OSE]'s approval.

F.     A municipality with a domestic water well drilling ordinance shall act upon a new domestic water well permit application within thirty days of receipt of the request.

G.     A municipality *shall notify* the [OSE] of all municipal permit denials for domestic well authorization.

H.     An applicant may appeal the decision of the municipality to the district court in the county of the municipality.

I.     Nothing in this section shall limit the authority of the [OSE] to administer water rights as provided by law.

J.     The [OSE] shall not be liable for actions taken in accordance with a municipal ordinance authorizing restriction of domestic well drilling within the exterior boundaries of a qualified municipality.

(Emphasis added.)

{11}     As indicated above, the plain language of Section 3-53-1.1(D) requires municipalities to file any ordinance restricting the drilling of wells with the OSE. If we give these words their ordinary meaning, we must conclude that the actual notice given by the City to the OSE falls short of that requirement. Based only on the language of Section 3-53-1.1(D), to

5

conclude that something less than filing the actual ordinance sufficiently satisfies the statute would require us to go outside the plain meaning of the words. The parties each urge different interpretations of Subsection (D)'s language.

{12} The parties seem to agree that Section 3-53-1.1(D) is intended to facilitate notice. They disagree, however, as to whom it is intended to notify. The City contends that Section 3-53-1.1(D)'s filing requirement was intended "to facilitate and coordinate" the efforts of municipalities and the OSE. Stennis argues that the requirement was intended to notify not only the OSE but also the public and other municipalities. As stated above, the district court agreed with the City. While the interpretation embraced by the City and the district court seems reasonable enough, Stennis's interpretation is perhaps just as likely. Very little evidence can be found for either argument in the other provisions of Section 3-53-1.1, and for that reason, we adopt neither.

{13} As a whole, Section 3-53-1.1 recognizes the related interests of three parties: the citizen who desires to drill a well; the municipality that desires to regulate well-drilling; and the OSE, as the ultimate steward of New Mexico's water supply. Accordingly, Section 3-53-1.1 allocates a variety of rights and obligations to each. Subsections (B), (C), (F), and (H) protect the citizen by (1) ensuring the citizen's right to drill where the cost of drilling is cheaper than establishing a connection to the municipal system, Section 3-53-1.1(B); (2) requiring the municipality to provide water to the citizen within ninety days of a denial, Section 3-53-1.1(C); (3) requiring the municipality to act on all permits within thirty days, Section 3-53-1.1(F); and (4) bestowing upon the citizen a right to appeal adverse decisions, Section 3-53-1.1(H). Subsections (A) and (E) recognize the interests of the municipality by (1) providing the statutory power to enact ordinances regulating wells within a municipality's own borders, Section 3-53-1.1(A); and (2) requiring citizens to obtain permits from both the city and the OSE prior to drilling, Section 3-53-1.1(E). Finally, subsections (G), (I), and (J) acknowledge the interests of the OSE by (1) providing that cities must notify the OSE when they deny permit applications, Section 3-53-1.1(G); (2) recognizing that the OSE retains its authority to regulate water rights, Section 3-53-1.1(I); and (3) limiting the OSE's liability for municipal permit denials, Section 3-53-1.1(J). These provisions give us scant indication of the legislative intent behind Subsection (D). They seem to favor equally the interests of the City, Stennis, and the OSE; and it is therefore impossible for us to say conclusively whether Subsection (D) was intended to provide simple cross-communication between municipalities and the OSE, or whether some other motivation was at work—the creation of a filed public record, for instance, that might be available for inspection by citizens and other municipalities.

{14} What little evidence we find in other provisions seems to indicate that the Legislature intended municipalities to actually *file* their ordinances with the OSE. In Subsection (G), for example, cities must "notify" the OSE when they deny a citizen's municipal permit application, Section 3-53-1.1(G). They are not required to *file* such denials with the OSE. Simple notice will not do, and it therefore seems clear that if the Legislature had intended simple notice to satisfy the requirements of Subsection (D), it would have written it to

6

provide as much. Nor is there any indication that this situation is one the statute's drafters failed to anticipate. *See Brown*, 2004-NMCA-040, ¶ 13; *Lane*, 1996-NMCA-023, ¶ 17. In fact, it is exactly the situation Section 3-53-1.1(D) contemplates—the municipality passed an ordinance regulating the drilling of wells within its boundaries, and for whatever reason, did not file it with the OSE. It remains unclear exactly why the Legislature chose to require *filing* and not simply *notice*. But we must "give effect to the legislative intent, not . . . question the wisdom of the [L]egislature's requirements." *Citizens for Incorporation, Inc. v. Bd. of County Commr's*, 115 N.M. 710, 715-16, 858 P.2d 86, 91-92 (Ct. App. 1993) (citation omitted). In this case, that intent is apparent in the statute's plain language.

{15} The Supreme Court has read Section 3-53-1.1(D) as we do. Throughout *Stennis*, the Court refers to the filing requirement in mandatory terms, and never once does the Court suggest that a municipality might satisfy the statute by filing a copy of its enactment containing the actual language of the ordinance as opposed to the ordinance itself. For instance, in the introduction, the Court observes "that a municipality must file its ordinance with the [OSE]." *Stennis*, 2008-NMSC-008, ¶ 3. Later, it states that Section 3-53-1.1(D) "requires that the City follow a certain procedure, in particular, the filing of the municipal ordinance with the [OSE]." *Stennis*, 2008-NMSC-008, ¶ 11. Still later, it describes the statute this way: "Section 3-53-1.1(D) also specifically required the 1999 Ordinance to be filed with the [OSE] to be effective." *Stennis*, 2008-NMSC-008, ¶ 16. Finally, in perhaps its strongest language, the Court holds "Section 3-53-1.1(D) *clearly mandates that the City file the 1999 Ordinance* with the [OSE]." *Stennis*, 2008-NMSC-008, ¶ 23 (emphasis added).

{16} Moreover, our Legislature has proven capable of explicitly providing for substantial compliance when it decides such flexibility is necessary, and although the absence of such language is not alone determinative, its absence provides additional support to our holding. *See, e.g.*, *Cochrell*, 2003-NMCA-094, ¶ 2 (analyzing NMSA 1978, § 7-38-70 (1982), and observing that it requires only that property be "*sold substantially in accordance with the Property Tax Code*"); *Ferguson-Steere Motor Co. v. State Corp. Comm'n*, 60 N.M. 114, 118, 288 P.2d 440, 444 (1955) (observing that the Legislature explicitly allowed for substantial compliance in the case of 1953 Comp. § 64-27-70, which does not require strict compliance on the part of the corporation commission), *but cf. State v. Cherryhomes*, 1996-NMSC-072, ¶ 18, 122 N.M. 687, 930 P.2d 1139 (holding that substantial compliance was permissible under the appointment provisions for special prosecutors); *Town of Hurley v. N.M. Mun. Boundary Comm'n*, 94 N.M. 606, 608, 614 P.2d 18, 20 (1980) (holding that a party substantially complied with a statutory notice provision); *Rutledge v. Johnson*, 81 N.M. 217, 222, 465 P.2d 274, 279 (1970) (refusing to require strict compliance where party received benefits created under the statute but sought to avoid responsibility under same by arguing that verification of his signature was an absolute requirement); *Town of Hot Springs v. Able*, 46 N.M. 149, 151, 123 P.2d 720, 722 (1941) (holding the substantial compliance was permissible despite mandatory language to the contrary).

**CONCLUSION**

7

**{17}** Substantial compliance is a doctrine of statutory interpretation that examines whether an actor follows a statute "sufficiently so as to carry out the intent for which the statute was adopted and [in a manner that] accomplishes the reasonable objectives of the statute." *Lane*, 1996-NMCA-023, ¶ 17 (internal quotation marks and citation omitted). In this case, we hold that the plain language of Section 3-53-1.1(D) clearly expresses the Legislature's intent that municipalities file their ordinances with the OSE. Having no doubt of Stennis's actual notice of a municipal ordinance, but because the City did not strictly comply with Section 3-53-1.1(D), as they must, we yield to the mandatory requirements of the law. Accordingly, we reverse the order of the district court.

**{18}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**ROBERT E. ROBLES, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *Stennis v. City of Santa Fe*, Docket No. 28,985**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-SB | Substantial Compliance |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **GV** | **GOVERNMENT** |
| GV-MU | Municipalities |
| GV-SE | State Engineer |
| GV-WS | Water and Waste Systems |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-WL | Water Law |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |