**Certiorari Granted, September 14, 2012, No. 33,759**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-096**

**Filing Date: July 17, 2012**

**Docket No. 31,310**

**BLANCA MARTINEZ,**

        **Plaintiff-Petitioner,**

**v.**

**PUBLIC EMPLOYEES RETIREMENT
ASSOCIATION OF NEW MEXICO,
and PUBLIC EMPLOYEES RETIREMENT
BOARD,**

        **Defendants-Respondents.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge**

The Pickett Law Firm, LLC
Mark L. Pickett
Las Cruces, NM

for Petitioner

Charles Rennick, LLC
Charles Rennick
Santa Fe, NM

for Respondents

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**     Blanca Martinez appeals from a district court decision upholding the Public Employees Retirement Board's conclusion that (1) she had no absolute entitlement to survivor benefits under

1

her deceased husband's retirement plan with the Public Employees Retirement Association, and (2) she had not substantially complied with the statutory requirement to apply for survivor benefits within one year of her husband's death. We hold that Mrs. Martinez did not have an interest in her husband's retirement benefits after his death other than a statutorily created property interest in survivor benefits. We also hold that the time limit and documentation requirements in NMSA 1978, Section 10-11-14.5(A) (1997) are rationally related to a legitimate government interest and did not unconstitutionally deprive Mrs. Martinez of her interest in survivor benefits. Finally, we hold that Mrs. Martinez did not substantially comply with the statutory requirements so as to excuse her failure to strictly comply. We thus affirm.

## I. BACKGROUND

### A. Factual Background

{2} Blanca Martinez's husband, Marco Martinez, died of a sudden heart attack on March 8, 2007. He was 47 years old. At the time of his death, he had worked for the New Mexico Department of Corrections for seven years. Mr. Martinez was enrolled in the Public Employees Retirement Association (PERA) and contributed to his PERA account throughout his employment with the State of New Mexico. Mrs. Martinez was his designated beneficiary for both survivor benefits and refund of contributions.

{3} On May 30, 2007, Mrs. Martinez sent a letter to PERA notifying them of her husband's death. She enclosed a copy of the death certificate and mentioned "the PERA survivor pension referenced on page 23 of the PERA member handbook." Her letter requested that PERA send her "any paperwork [she] need[ed] to complete to receive this survivor pension." The letter prompted PERA to conduct an audit of Mr. Martinez's file to determine what, if any, benefits were due to his beneficiaries. On June 5, 2007, PERA sent Mrs. Martinez a letter stating that "PERA [was] conducting an audit on Mr. Marco Martinez'[s] retirement file to determine the amount of monthly retirement benefits that are payable to [her]." On June 27, 2007, PERA sent Mrs. Martinez another letter. In this letter, PERA requested that Mrs. Martinez complete and return the enclosed "Application for Survivor Retirement Annuity." There was no mention of a deadline for submission of this form and/or supporting documents. Although the letter states that a copy of the relevant section of the Public Employees Retirement Act, *see* NMSA 1978, Sections 10-11-1 to -142 (1987, as amended through 2012) (the Act), was enclosed, Mrs. Martinez maintains that no such document was included. The letter also stated that, as a designated beneficiary, Mrs. Martinez would "receive the calculated amount . . . shown on the attached form. This estimate is based on factors such as the final average salary, service credit and eligibility rules for the applicable coverage plan for the deceased member at the time of death." Finally, the letter stated that Mrs. Martinez would "be placed on the payroll retroactive to 04/01/2007" once the paperwork is complete. Included with the letter was a form showing the calculation of Mrs. Martinez's benefits ($768.72 per month).

{4} Mrs. Martinez completed the application for survivor annuity on August 3, 2007, but testified that she did not send it to PERA because she was busy with other matters related to her husband's estate and uncertain about how to complete it since there was an ongoing investigation into the cause

of her husband's death. She testified that she "might have known about [the one year deadline for application for benefits]," but she had "other things . . . to do" related to her husband's death. On May 12, 2009, two years and two months after Mr. Martinez's death, PERA notified Mrs. Martinez by mail that she had failed to submit the application for survivor annuity within one year of her husband's death and, therefore, she was "no longer eligible for a survivor benefit." On November 12, 2009, Mrs. Martinez, through counsel, submitted the application for survivor annuity and requested that PERA accept it in light of the circumstances of her case. PERA denied this request by letter on November 17, 2009, stating, "we are unable to allow you to receive survivor benefits" because "you did not comply with the statutory one[-]year requirement."

## B.    Procedural Background

{5}    Mrs. Martinez appealed PERA's decision pursuant to 2.80.1500 NMAC (10/15/1997) (amended 9/30/10). After a hearing, the hearing officer concluded that Mrs. Martinez did not have a "statutory right or entitlement" to the survivor pension, that an application that satisfied the requirements of Section 10-11-14.5(A), including the one-year deadline, was required to access benefits, and that PERA has no power to "waive or to ignore the statutory time limit for filing an Application for Survivor Pension." Mrs. Martinez filed exceptions to the hearing officer's recommended decision and requested that the Public Employees Retirement Association Board (PERA Board) review the entire record. The hearing officer responded to Mrs. Martinez's exceptions and reasserted his recommended decision. The PERA Board reviewed the appeal, accepted the hearing officer's recommended decision, and found that "the relief requested in this appeal cannot be granted by PERA."

{6}    Mrs. Martinez appealed the PERA Board's decision to the district court. The district court found that Mr. Martinez's benefits had vested in him, but not in Mrs. Martinez, "thereby according her no right or entitlement to said retirement benefits." The court found that the one-year period for filing for survivor benefits in Section 10-11-14.5(A) "operat[es] in the nature of a statute of limitations," and that Mrs. Martinez's failure to file the application within the year after her husband's death made her ineligible to receive a survivor pension, but is entitled to either a refund or a rollover of the member contributions of her deceased husband. *See* § 10-11-117(E) ("If all pension payments permanently terminate before there is paid an aggregate amount equal to the retired member's accumulated member contributions at the time of retirement, the difference between the amount of accumulated member contributions and the aggregate amount of pension paid shall be paid to the retired member's refund beneficiary. If no refund beneficiary survives the retired member, the difference shall be paid to the estate of the retired member."). PERA's "Refund Beneficiary Designation" form states "If I die and no pension is payable under the PERA Act, I designate the person named below as my refund beneficiary to receive the refund of my member contributions." The court affirmed the decision of the PERA Board. Mrs. Martinez filed a petition for writ of certiorari that was granted by this Court.

## II.    DISCUSSION

3

**{7}**     Mrs. Martinez raises two issues on appeal:   (1) whether Section 10-11-14.5(A) unconstitutionally deprives Mrs. Martinez of a fundamental property right, and (2) whether Mrs. Martinez substantially complied with PERA's requirements for application for survivor benefits. In their briefs, both parties address the latter question last.  Because the answer to this question could resolve this case without resorting to the constitutional questions raised, we address it first.

## A.     Mrs. Martinez Did Not Substantially Comply with Section 10-11-14.5(A)

### 1.     Standard of Review

**{8}**     Generally, this Court applies the same standard of review as the district court and reviews an administrative order to determine whether the order is "arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806; *see* NMSA 1978, Section 39-3-1.1(D) (1999); § 10-11-120(B).  Questions of substantial compliance with a statute depend on statutory construction, however, and we review those questions de novo.  *See Stennis v. City of Santa Fe (Stennis I)*, 2008-NMSC-008, ¶ 13, 143 N.M. 320, 176 P.3d 309 ("Interpretation of . . . statutes is a question of law that we review de novo."); *State ex rel. Solsbury Hill, LLC v. Liberty Mut. Ins. Co.*, 2012-NMCA-032, ¶ 27,  273 P.3d 1 (stating that the issue of substantial compliance is one of statutory construction which is subject to de novo review).

### 2.     Analysis

**{9}**     Mrs. Martinez contends that her claim for survivor benefits should not be barred because she substantially complied with the statute's requirements by sending a letter and the certificate of death within three months of her husband's death.  Section 10-11-14.5(A) states:

> A survivor pension *may* be paid to certain persons related to or designated by a member who dies before normal or disability retirement *if a written application for the pension, in the form prescribed by the association*, is filed with the association by the potential survivor beneficiary or beneficiaries *within one year of the death of the member*.

(Emphasis added).  Mrs. Martinez argues that (1) the purpose of Section 10-11-14.5(A) is to give PERA notice of a claim and the May 30, 2007, letter met that purpose; and (2) the purpose of the one-year limit is unknown and, therefore, a finding that she substantially complied with the requirements of Subsection A does not undermine the statute's purpose.  Mrs. Martinez contends that the May 30, 2007, letter notifying PERA of her husband's death contained sufficient information, such as his social security number and date of birth, for PERA to (1) identify his file and determine whether his benefits had vested, (2) verify his pay, (3) know that Mrs. Martinez sought payment of her survivor's benefits, and (4) calculate Mrs. Martinez's monthly survivor benefits.  She maintains that the fact PERA acted on the letter in much the same way it would have

on receipt of the application for survivor annuity shows that she substantially complied with the requirements of Subsection A.

{10} PERA counters that the "purpose of the requirements is to ensure accuracy, to identify potential minor beneficiaries, and to deter fraud by virtue of requiring official documents and sworn statements," as well as to "ensure the actuarial viability of the trust fund." PERA argues that the statute's one-year requirement is mandatory because it is "consistent with the actuarial nature of the trust fund." The one-year requirement also prevents PERA from having to manage and plan for applications for survivor benefits that are submitted "5, 10, 15[,] even 20 years" after the death of a member.

{11} The parties do not dispute that Mrs. Martinez did not comply strictly with Subsection A. *Stennis v. City of Santa Fe (Stennis II)*, 2010-NMCA-108, ¶ 9, 149 N.M. 92, 244 P.3d 787 ("Strict compliance means that the statutory provision at issue must be followed precisely."). Instead, Mrs. Martinez argues that her actions were sufficient to substantially comply with the requirements. When a party claims substantial compliance, "a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted and accomplishes the reasonable objectives of the statute." *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 485, 650 P.2d 3, 7 (Ct. App. 1982); *see Stennis II*, 2010-NMCA-108, ¶ 9 (stating that substantial compliance "recognizes the reality that legislatures cannot predict all possible applications when drafting a statute"). Thus, a finding of "[s]ubstantial compliance" depends on the intent of the Legislature. *See Brown v. Trujillo*, 2004-NMCA-040, ¶ 13, 135 N.M. 365, 88 P.3d 881. To determine whether Mrs. Martinez substantially complied with the statute, we assess the "nature and purpose of the statute, and we examine the acts purporting to achieve compliance in light of the purposes served by strict compliance with the letter of the statute." *Id.* (internal quotation marks and citation omitted). Furthermore, "[d]eparture from the strict letter of a statute should . . . be undertaken with great caution. In particular, one must be careful not to underestimate the purposes served by strict compliance with the letter of the statute." *Lane v. Lane*, 1996-NMCA-023, ¶ 18, 121 N.M. 414, 912 P.2d 290.

a. **Purpose of PERA and Section 10-11-14.5(A)**

{12} PERA was established in 1947, *see Pierce v. State*, 1996-NMSC-001, ¶ 32, 121 N.M. 212, 910 P.2d 288, by the Act. Regulation of PERA is codified in the New Mexico Administrative Code at 2.80.100 to -2300 NMAC (11/19/81, as amended through 9/30/10). PERA was established to collect, hold in trust, and invest monies contributed by employees and employers to pay "future retirement benefits to . . . PERA members." *Gonzales v. Pub. Emps. Ret. Bd.*, 114 N.M. 420, 422, 839 P.2d 630, 632 (Ct. App. 1992). The PERA Board is charged "to preserve, protect, and administer the trust to meet its current and future obligations and provide quality services to Association members." PERA, http://www.pera.state.nm.us. As trustee of PERA funds, the PERA Board "has a fiduciary responsibility to invest these funds solely in the interest of the members, retirees, and beneficiaries and exclusively to provide benefits to the members, retirees, and beneficiaries and to pay reasonable administrative costs." 2.80.300.30(A)(2) NMAC; *see* N.M. Const. art. XX, § 22(B). In addition, the board must "give primacy to the preservation of trust funds

and . . . insure the procurement of a reasonable income while avoiding undue investment risks." 2.80.300.30(A)(2) NMAC. Both the enabling statute and the administrative code highlight the fiduciary responsibility of PERA to all state employees, retirees, and beneficiaries. *See* §§ 10-11-130 to -133; 2.80.300.30(A)(2) NMAC; *see also* N.M. Const. art. XX, § 22. The one-year deadline and the requirement for specific documents must be understood within that context.

**{13}** Mrs. Martinez makes two distinct arguments with respect to Subsection A. First, she argues that the one-year time limit serves no discernable purpose and, therefore, strict compliance with that requirement does not further the intent of the statute. Second, she argues that the contents of her letter of May 30, 2007, were sufficient to meet the purposes of the statute. We address each of these points in turn.

### b.    Time Limit

**{14}** Our Supreme Court has addressed time limits applying to the administration of PERA funds in *State ex rel. Pub. Emps. Ret. Ass'n v. Longacre*, 2002-NMSC-033, ¶¶ 20-23, 133 N.M. 20, 59 P.3d 500. The Court discussed the reasons why PERA may not recover overpayments to retirees and beneficiaries past a certain date:

> a statute of limitations or repose providing that the state may not recover overpaid retirement benefits after the expiration of a certain time period serves the purpose of facilitating effective financial planning by retirees who are often forced to make, for example, critical healthcare decisions based upon the availability of fixed and often limited resources.

*Id.* ¶ 20 n.8. In *Longacre*, the purpose of the bar on PERA claims against retirees and beneficiaries was to "reduce the potential hardship to retirement pension beneficiaries from having to return overpayments that may have long ago been spent; and . . . provide a strong incentive to PERA to conduct regular audits for the purpose of correcting any errors or omissions [in payments]." *Id.* ¶ 27. The bar on claims in that case was critical to sound financial management for both parties. *Id.* ¶¶ 26-27.

**{15}** In this case, the language in Subsection A barring claims for survivor's benefits after one year from the death of the member serves PERA's fiduciary purpose. The deadline promotes resolution and closure of claims for benefits within a manageable period and allows PERA to administer its funds effectively and profitably. It prevents PERA from having to hold some funds in abeyance in anticipation of a claim, and allows PERA to invest and manage the funds, consistent with its mission, for the benefit of all retirees and beneficiaries. It permits PERA to determine the beneficiaries, the amount of their annuity, and the number of years they will be paid, as well as to plan for reservation and/or investment of funds for those payments in a timely manner. *See* §§ 10-11-123, -126, -127 (relating to management of a "retirement reserve fund" for the payment of benefits to "retired members and survivor pension beneficiaries"). Thus, the deadline in Section 10-11-14.5(A) serves to help ensure that PERA can manage the funds in its control to the benefit of its constituents, including members, retirees, and beneficiaries, as charged by the Legislature.

6

### c. Documentary Requirements

**{16}** The specific documentary requirements of an application for benefits aid PERA in preventing fraud. Section 10-11-14.5(A) states that an application for benefits must be filed "in the form prescribed by the association." The prescribed form is set out in the New Mexico Administrative Code at 2.80.900.8(A) and (B). In addition, the form must be accompanied by certain documents, which include a death certificate, a marriage license, a birth certificate or other proof of age of the survivor beneficiary, an affidavit verifying that the beneficiary was married to the member at the time of the member's death, and social security cards for prospective payees. *See* 2.80.900.8(B) NMAC. The administrative code also states that "[w]hen the application and accompanying documentation . . . are filed, PERA *will determine* whether a pension is payable," indicating that PERA is not obligated to begin processing applications until all proper documentation is received. 2.80.900.8(C) NMAC (emphasis added). Although some of the raw information in these documents may have been provided by the member when he applied and, therefore, found in the member's retirement file already, these documents provide PERA with independent verification of information previously asserted by the member in his designation of beneficiaries.

**{17}** As trustees of the funds contributed by its members and the state and municipal agencies it serves, the PERA board has a fiduciary duty to be vigilant against fraud. In addition to imposing this duty on the PERA Board, the Legislature, by requiring compliance with "the form prescribed by the association," entrusted the PERA Board to determine how best to carry out that duty. Section 10-11-14.5(A). The documents required by 2.80.900.8(B) of the Administrative Code are consistent with this duty because they permit PERA to verify the beneficiary's identity and age, as well as whether and how long the member and the beneficiary were married. Finally, proper application includes an application form that asserts an intent to apply for benefits. *See* § 10-11-14.5(A); PERA, http://www.pera.state.nm.us Application for Survivor Annuity (June 2007). Mrs. Martinez's letter neither indicated conclusively that she intended to access the benefits, nor included the required independent verification of her status as a beneficiary.

**{18}** Mrs. Martinez contends that the fact that PERA initiated an audit of her husband's contributions, contacted his employer to verify his final salary, and calculated the amount of the monthly survivor benefits indicates that PERA had enough information to pay her benefits and, therefore, she substantially complied with the deadline. We are not persuaded. In *In re Estate of Mayfield*, 108 N.M. 246, 248, 771 P.2d 179, 181 (1989), the claimant argued that the fact that the "[respondent sought] discovery and request[ed] a trial setting within the sixty-day statutory period [for filing a claim]" indicated that "litigation of the claim had ensued, notwithstanding that the claimant failed to take formal initiatory steps under the nonclaim statute." The claimant maintained that the estate's actions constituted a waiver of filing requirements. *Id.* The Court rejected this contention, stating "neither the heirs nor the personal representative can . . . waive the mandatory requirements of the nonclaim statute." *Id.* at 249, 771 P.2d at 182. Here, like in *Mayfield*, the conduct of PERA in anticipation of a claim does not relieve Mrs. Martinez from compliance with the statutory requirements for making the claim.

**{19}**     Furthermore, PERA's action to investigate whether Mr. Martinez was vested and to calculate Mrs. Martinez's potential benefits indicates only that PERA knew how much they *may* have to pay in survivor benefits. Under the statute, however, PERA is not obligated to begin payments until all the required documents are received and the beneficiaries are verified. *See* § 10-11-14.5(A); 2.80.900.8(C) NMAC. Here, since the documents were not submitted, there was no trigger to earmark funds for Mrs. Martinez's benefits or to begin making payments. As discussed, PERA has a responsibility to manage funds to achieve a "reasonable income." Consequently, it is important that PERA know which funds are available for investment and in which portfolios. The difference between benefits that are potentially payable and those that are verified and certainly payable is critical to this goal.

**{20}**     Finally, Mrs. Martinez asks that we compare the current version of Subsection A to the 1993 version and conclude that, because pre-amendment applicants were not subject to a deadline but post-amendment applicants are, the only purpose of the deadline is to deny benefits to those otherwise entitled. As discussed, however, the application requirements in the Act are related to its overall purpose. The fact that applicants before and after the amendments were subject to different requirements does not indicate that the 1997 amendments were unrelated to the purpose and intent of the statute.

**{21}**     Mrs. Martinez neither strictly nor substantially complied with Section 10-11-14.5(A). Her letter of May 30, 2007, although within the time period for claims for survivor benefits, was insufficient to permit PERA to verify her status as a beneficiary and to plan for making payments to her, including setting aside and investing funds for those payments.

**B.  The Act's One-Year and Documentation Requirements do not Violate a Fundamental Personal Property Right Because they are Rationally Related to a Legitimate Government Purpose**

**{22}**     Mrs. Martinez argues that vested retirement benefits are property in which an individual's rights are protected and that Mr. Martinez had earned a vested property interest in his retirement benefits that passed to his wife on his death. She maintains that the one-year time limit on application for those benefits deprives her of property rights without substantive due process as required under the New Mexico and United States Constitutions. Mrs. Martinez argues that we should review the statute's requirements for applications using a strict scrutiny test because the interest at stake is a fundamental property interest.

**{23}**     PERA counters that Mrs. Martinez did not obtain property rights equivalent to her husband's on his death because survivor benefits are payable only upon compliance with the retirement plan's requirements, including those in Subsection A. PERA contends that Mrs. Martinez failed to preserve her argument that Subsection A unconstitutionally deprives her of a property right. In the event that the Court finds the issue was preserved, PERA also argues that, even if Mrs. Martinez did have a property interest in the survivor benefits, Subsection A's requirements are subject only to rational basis review, and under that test, the requirements are not unconstitutional.

## 1.    Mrs. Martinez's Arguments were Preserved

**{24}**    "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987); *see* Rule 12-216 NMRA. Preservation of issues is required on appeal from decisions in administrative proceedings. *See Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 23, 139 N.M. 122, 129 P.3d 158. Although preservation of an issue is a prerequisite to its review on appeal, "the preservation requirement should be applied with its purposes in mind, and not in an unduly technical manner." *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct. App. 1995).

**{25}**    At the administrative hearing, Mrs. Martinez questioned PERA's witness about the reasons for the time limit and raised the due process arguments regarding her property rights in closing argument. The hearing officer concluded that the statute does not "create a statutory right or entitlement for a named survivor beneficiary to always receive a survivor pension from PERA upon the death of a vested PERA member." The hearing officer did not address the constitutional issue of whether Mrs. Martinez had been deprived of a right to substantive due process. *See Montez v. J & B Radiator, Inc.*, 108 N.M. 752, 754, 779 P.2d 129, 131 (Ct. App. 1989) ("Raising [a constitutional] issue before the hearing officer was not required in order to preserve it because he had no authority to decide the issue."). Mrs. Martinez again raised the issue of whether her husband's vested property rights passed to her on his death in her exceptions to the hearing officer's recommended conclusions of law. The PERA Board accepted the hearing officer's conclusions.

**{26}**    Finally, Mrs. Martinez raised the issue of her property rights in the survivor benefits and Subsection A's impact on those rights in the appeal hearing before the First Judicial District Court. The district court judge found that (1) "the vesting rights law . . . applies to the employee spouse, not the beneficiary spouse;" (2) the statute "did not create a right or entitlement" in Mrs. Martinez, and (3) "there was no disregard of Mrs. Martinez'[s] [due process] rights in the circumstances here." These issues were preserved for appeal.

## 2.    Standard of Review

**{27}**    The parties propose the same standard of review and cite to *Lantz v. Santa Fe Extraterritorial Zoning Authority*, 2004-NMCA-090, ¶ 5, 136 N.M. 74, 94 P.3d 817, which states "we will not disturb a final agency decision unless it was fraudulent, arbitrary, or capricious; not supported by substantial evidence; or otherwise not in accordance with law." Constitutional questions like those before us are questions of law and are reviewed de novo. *See Los Chavez Cmty. Ass'n v. Valencia Cnty.*, 2012-NMCA-044, ¶ 12, 227 P.3d 475.

## 3.    Analysis

**{28}**    Mrs. Martinez asks that we find that the one-year requirement in Subsection A deprives her of a property right unconstitutionally because PERA has not shown that it serves a compelling

government interest. The first step in our inquiry is to determine whether Mrs. Martinez had an interest in PERA retirement benefits and, if so, the nature of the interest.

**a.      Interest as a Matter of Law**

{29}      In *Pierce*, the New Mexico Supreme Court analyzed the Act and held that the statute creates vested property rights. *Pierce*, 1996-NMSC-001, ¶ 43. The Court stated:

> [W]e find that the express language of the [PERA] statute[] initially creates an expectancy, or property interest, in receiving benefits. [It] require[s] a minimum of five years of earned service credits before *an employee* is eligible to receive benefits. The only other condition of eligibility is reaching a specified age. Therefore, based on an absolute right to receive some form of benefits after earning five years of service credits, we may infer that the statute[] create[s] vested property rights, but that these rights do not mature until the final statutory condition is met.

*Id.* (emphasis added). The "final statutory condition" is attainment of retirement age or fulfillment of other conditions set out in the statute. *Id.* ("[M]aturity occurs when the terms for retirement have been met. The [L]egislature may choose to establish a different point of maturity." *Id.* ¶ 44 (citation omitted); *Copeland v. Copeland*, 91 N.M. 409, 412, 575 P.2d 99, 102 (1978), *modified on other grounds by Schweitzer v. Burch*, 103 N.M. 612, 616, 711 P.2d 889, 893 (1985). The New Mexico Constitution also provides for vested property rights:

> Upon meeting the minimum service requirements of an applicable retirement plan created by law for employees of the state or any of its political subdivisions or institutions, a member of a plan shall acquire a vested property right with due process protections under the applicable provisions of the New Mexico and United States [C]onstitutions.

N.M. Const. art. XX, § 22(D).

{30}      Mrs. Martinez maintains that her husband's "absolute" interest in pension benefits passed to her on his death as a matter of law. In response, PERA cites *Ruggles v. Ruggles* to support its argument that "the benefits themselves do not vest in the survivor." *See* 116 N.M. 52, 860 P.2d 182 (1993). To the extent that Mrs. Martinez attempts to distinguish *Ruggles* on grounds that it is a divorce case not focused on survivor benefits, we are not persuaded. *Ruggles* makes clear that "[b]efore actual retirement, the right to receive an income stream from the pension plan is also subject to the contingency that the employee's interest will become vested, then the contingency that it will mature, and all along the contingency that the employee will not die." *Id.* at 65, 860 P.2d at 195. We agree with PERA that *Ruggles* and *Schweitzer*, to which *Ruggles* refers, appear to dictate that, when a member dies before his pension benefits mature and unless a statute provides otherwise, the surviving spouse has an interest only in the actual contributions made by the member to the pension plan, not in the benefits. *Ruggles*, 116 N.M. at 60, 860 P.2d at 190; *Schweitzer*, 103 N.M. at 615, 711 P.2d at 892.

10

**{31}** To the extent Mrs. Martinez relies on *Pierce* and Section 22 of Article XX of the New Mexico Constitution, those sources discuss vesting of rights in the contributing member, not in the member's beneficiaries, and are, therefore, unavailing. *See Pierce*, 1996-NMSC-001, ¶ 37 ("[The] provision granted *employees* . . . a vested right in membership." (emphasis added)); *id.* ¶ 42 ("[PERA] grant[s] *employees* a substantive right to receive retirement benefits upon meeting certain requirements." (emphasis added)); N.M. Const. art. XX, § 22(D) ("*[A] member of a plan* shall acquire a vested property right with due process protections." (emphasis added)); *see also Dickey v. Ret. Bd.*, 548 P.2d 689, 692 n.2 (Cal. 1976) (in bank) ("[T]he wife of a public employee does not have a separate vested right to a pension. Her right does not vest upon her husband's acceptance of employment but upon the happening of the contingency upon which her benefits are payable, such as his death."). Finally, as justification for her position that her husband's interests passed to her as a matter of law, Mrs. Martinez cites to Subsection K, which pertains to survivor benefits. Mrs. Martinez's reliance on Subsection K is not inconsistent with PERA's position that the Act is the sole source of any right Mrs. Martinez may have. We conclude that Mr. Martinez's interest in his pension benefits did not pass to Mrs. Martinez on his death and that her interests are limited to those created by the Act.

### b.     Interest Created by Statute

**{32}** The terms of the statute creating a property right also govern how and when the right will mature. *See Pierce*, 1996-NMSC-001, ¶ 44. Here, Mr. Martinez's right to retirement benefits vested when he completed five years of service and would have matured when he turned sixty-five. *See* §§ 10-11-26.2 and -8. Thus, Mr. Martinez's rights to retirement benefits created by the Act were accessible by him only after completion of the statutory requirements.

**{33}** Similarly, Mrs. Martinez's right to a survivor pension was created by the Act and she became eligible for it only when her husband died. *See, e.g.*, §§ 10-11-117 and -14.5. Mr. Martinez's benefits, had he retired at age sixty-five, would have been "equal to three percent of final average salary multiplied by [his] service credit." Section 10-11-26.3. Mrs. Martinez does not have a direct interest in this benefit; rather, she had a survivor's interest, which is statutorily defined in Section 10-11-14.5(K) as the greater of several payment options, neither of which is the same as the benefit to which Mr. Martinez was entitled. In addition, just as Mr. Martinez's rights would have matured only on completion of certain statutory requirements, Mrs. Martinez's rights depended on fulfillment of the statute's terms, including surviving her husband, being designated as a beneficiary, and compliance with PERA's application requirements.

**{34}** Mrs. Martinez urges us to find that the language in Section 10-11-14.5(K) gives her a right to payment of a benefit notwithstanding the language of Subsection A. Subsection K states that "a survivor pension *shall* be payable to the designated survivor beneficiary." Section 10-11-14.5(K) (emphasis added). The mandatory language of Subsection K, however, predates the 1997 amendments and, therefore, the conditions added in 1997 reflect the most recent intent of the Legislature. *See Vaughn*, 98 N.M. at 486, 650 P.2d at 8 ("Where an amendment is inserted without regard to the remaining portions of an act, the clear intent of the amendatory clauses prevails over any contradictory provisions because it is a later declaration of legislative intent and the

11

[L]egislature . . . can be presumed to change the existing law."). Moreover, all parts of a statute must be construed together. *See* NMSA 1978, § 12-2A-10(A) (1997) ("If statutes appear to conflict, they must be construed, if possible, to give effect to each."); *State v. Trujillo*, 2007-NMCA-056, ¶ 26, 141 N.M. 668, 160 P.3d 577 (stating the presumption that, when enacting amendments, legislators are "fully aware" of the existing language and intend the amendments to "complement [the existing language], rather than act in conflict with it" (citation omitted)), *aff'd*, 2009-NMSC-012, 146 N.M. 14, 206 P.3d 125. If Subsection K were construed to require payment of survivor benefits regardless of the conditions of Subsection A, Subsection A would become superfluous, a result we are unwilling to allow. *See Nat'l Union of Hosp. Emps. v. Bd. of Regents*, 2010-NMCA-102, ¶ 23, 149 N.M. 107, 245 P.3d 51 ("[A]ll provisions of the act will be considered in relation to one another, with the attempt to render no part surplusage or superfluous."). Instead, Subsection A must be understood as a preliminary condition to the payments required in Subsection K.

**{35}** Although she cites to *Pierce* in support of her contention that Subsection K gives her an "absolute right to receive some form of retirement benefits," *Pierce* does not so hold. Rather, the *Pierce* court, while calling a vested right an "absolute right," also recognized that the "absolute right to receive benefits" was created by the PERA statute and "vests upon fulfilling the minimum of five years of service credits" and "matures when the employee attains the age specified in the plan." 1996-NMSC-001, ¶ 31; *Copeland*, 91 N.M. at 412, 575 P.2d at 102. The Court thus recognized that the "absolute right" could be accessed only by compliance with the Act. The Act states that, except as provided for survivor beneficiaries, "[a]ll payments stop upon the death of the retired member." Section 10-11-117(A). The Act also provides for refund of the employee's contributions in the event that the employee and the interests of the beneficiaries fail to mature. *See* § 10-11-117(E). Thus, even when an employee is "vested," these conditions of the plan govern whether and when an employee or beneficiaries will receive benefits. In addition, the PERA board has the power to modify both the contributions and benefits under the plan. The *Pierce* Court concluded that "[i]t is equally apparent that the PERA retirement board expressly retained the power to modify the amount of employee contribution or the amount of benefits payable." *Pierce*, 1996-NMSC-001, ¶ 33; *see also* N.M. Const. art. XX, § 22(E) ("Nothing in this section shall be construed to prohibit modifications to retirement plans that enhance or preserve the actuarial soundness of an affected trust fund or individual retirement plan."). Thus, Subsection K does not grant Mrs. Martinez an absolute right to benefits.

**{36}** Mrs. Martinez had a property interest in survivor's benefits for which she became eligible on her husband's death and which she could have accessed by submitting a complete application, with accompanying documents, within the one-year period set by the statute. Since she did not meet these conditions, her right to the survivor benefits terminated. We turn now to whether the requirements for application deprived her of her right to survivor's benefits without substantive due process, i.e., for no rational reason. *See N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 104 N.M. 565, 567, 725 P.2d 244, 246 (1986) ("Having identified the property interest, we must determine what process is due it.").

**c.    Substantive Due Process**

**{37}** The Fourteenth Amendment to the United States Constitution and Article II, Section 18 of the New Mexico Constitution require "due process of law" when a state deprives "any person of life, liberty, or property." U.S. Const. amend. XIV, § 1; N.M. Const. art. II, § 18. "Due process of law" includes both procedural due process and substantive due process. *See Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 24, 140 N.M. 136, 140 P.3d 1085 (discussing different analyses for procedural and substantive due process). When substantive due process rights are implicated, we apply one of three levels of scrutiny. *See ACLU of N.M. v. City of Albuquerque*, 2006-NMCA-078, ¶ 19, 139 N.M. 761, 137 P.3d 1215. The level of scrutiny "depends on the nature and importance of the individual interests asserted and the classifications created by the statute." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 12, 137 N.M. 734, 114 P.3d 1050. Strict scrutiny is appropriate in limited cases when "the violated interest is a fundamental personal right or civil liberty guaranteed by the constitution." *ACLU of N.M.*, 2006-NMCA-078, ¶ 19 (internal quotation marks and citation omitted); *see Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 36, 147 N.M. 720, 228 P.3d 504 ("Federal substantive due process protection extends only to a narrow and limited set of fundamental rights, which include the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." (internal quotation marks and citation omitted)), *aff'd*, 2011-NMSC-039, 150 N.M. 650, 265 P.3d 701. Under this analysis, the government must show there is "a compelling state interest supporting the challenged scheme, and to show that the statute accomplishes its purpose by the least restrictive means." *ACLU of N.M.*, 2006-NMCA-078, ¶ 19. Where "legislative classifications infringe on important but not fundamental rights, or involve sensitive but not suspect classes," intermediate scrutiny applies. *Id.* Under this level of scrutiny, the government must show "the scheme is substantially related to an important governmental interest." *Id.* "If the ordinance does not affect a fundamental right or create a suspect classification, nor impinge upon an important individual interest, rational basis review applies." *Id.* (internal quotation marks and citation omitted). Under this type of scrutiny, the burden is on the challenger to show that the statute has no rational relationship to a legitimate government purpose. *Marrujo v. N.M. State Highway Transp. Dep't*, 118 N.M. 753, 758, 887 P.2d 747, 752 (1994). The rational basis standard is not a high bar: "even a single persuasive rationale may be sufficient to establish the statute's constitutionality." *Cummings v. X-Ray Assocs. of N. M., P.C.*, 1996-NMSC-035, ¶¶ 20-21, 121 N.M. 821, 918 P.2d 1321.

**{38}** Mrs. Martinez urges us to assess the constitutionality of the Act's application requirements using a strict scrutiny analysis on grounds that her interest in survivor benefits is a fundamental property right. She depends on a statement in *Marrujo* to the effect that "[s]trict scrutiny applies when the violated interest is a fundamental . . . right [such as] fairness in the deprivation of life, liberty, or *property*." 118 N.M. at 757, 887 P.2d at 751 (emphasis added). Mrs. Martinez's reliance on *Marrujo* is misplaced. In that case, the Court addressed whether the Tort Claims Act's requirement that claims against the State be filed within "six months after the . . . occurrence of the injury which resulted in the death" violated the Marrujo family's substantive due process rights under the New Mexico and United States Constitutions. *Id.* at 756, 887 P.2d at 750 (internal quotation marks omitted). The Court held that "[a] notice of claim is not a substantive right." *Id.* at 758, 887 P.2d at 752. Instead, it is like a "statute of limitations, . . . or . . . statutory period for filing a notice of appeal," *id.*, and "does not preclude . . . access to the courts. It merely specifies

13

the circumstances under which a plaintiff can exercise [that] substantive right." *Id.* After noting that "[n]umerous New Mexico cases have applied the rational relationship test when evaluating constitutional challenges to notice statutes and statutes of limitation," *id.*, the Court went on to apply this test and find that the statutory requirement was constitutional because it was "rationally related to a legitimate state interest." *Id.* at 760, 887 P.2d at 754.

{39}    The rational basis test applies here. Like in *Marrujo*, where the time limit did not preclude a substantive right, the requirements in Subsection A do not preclude a survivor beneficiary from exercising a substantive right to receive benefits. *See Pierce*, 1996-NMSC-001, ¶ 42 (stating that the Act grants "employees a substantive right to receive benefits upon meeting certain requirements"). Rather, they specify the prerequisites for maturity of the benefits and the circumstances under which a beneficiary may receive them. *See Longacre*, 2002-NMSC-033, ¶ 24 (finding a time limit constitutional because it does not prohibit recovery of overpayments, but merely restrains the period in which to do so). In addition, the U.S. Supreme Court has applied rational basis scrutiny to similar cases involving pension benefit legislation. *See, e.g.*, *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984) (applying rational basis test to retroactive application of legislation requiring employers withdrawing from a plan to pay the plan their proportionate share of vested benefits); Gavin Reinke, Note, *When a Promise Isn't a Promise: Public Employers' Ability to Alter Pension Plans of Retired Employees*, 64 Vand. L. Rev. 1673, 1687 (2011). In *R.A. Gray & Co.*, the Court stated:

> It is by now well established that legislative Acts [sic] adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

467 U.S. at 729 (internal quotation marks and citation omitted).

{40}    Finally, the time limit in Subsection A functions like a statute of repose because it cuts off claims after a specific statutorily defined date. *See Cummings*, 1996-NMSC-035, ¶ 50. As stated in *Marrujo*, statutes of repose are analyzed using a rational basis test. *See* 118 N.M. at 759, 887 P.2d at 753; *Cummings*, 1996-NMSC-035, ¶¶ 20-21, ("New Mexico courts have repeatedly analyzed . . . statutes of repose under the rational-basis test.").

{41}    Under a rational basis test, Mrs. Martinez must show that the one-year deadline and requirement for specific documents are not related to any legitimate governmental purpose. *Marrujo*, 118 N.M. at 758, 887 P.2d at 752. Any reasonable justification will suffice to find these requirements constitutional. *Cummings*, 1996-NMSC-035, ¶ 21. Mrs. Martinez questioned PERA's manager of the Death and Disability Unit in the administrative hearing about the purpose of the one-year deadline. She maintains that, because the witness could not articulate a specific reason for this deadline, there must not be a reason. This inquiry alone, however, is not enough to demonstrate that there is no legitimate purpose for either the one-year period or the application requirements. The New Mexico Legislature, not PERA staff, instituted the one-year time frame and gave the PERA Board the power to require an application and accompanying documents. Therefore, the fact that

14

the PERA staff member did not know why the Legislature instituted the requirements in the statute is not dispositive. As discussed above, there are a number of rational reasons for both requirements, including timely determination of the amount and duration of payments to beneficiaries, independent verification of beneficiaries, and freedom from the uncertainty of unknown claims. Since Mrs. Martinez did not meet the burden of proving that there are no rational reasons for these requirements, they survive the low bar presented by the rational basis test. Although we recognize that this conclusion may have severe consequences, "[a] particular law is not rendered unreasonable or unconstitutional merely because its results are sometimes harsh." *Id.* ¶ 38.

**{42}** Mrs. Martinez also asserts that the requirements in Subsection A are an unconstitutional taking of her property without just compensation under Article II, Sections 4 and 20 of the New Mexico Constitution, but does not develop this argument. The Court, therefore, will not consider this argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

## III. CONCLUSION

**{43}** We hold that Mrs. Martinez did not substantially comply with the requirements of Section 10-11-14.5(A) so as to require PERA to pay her benefits. We also hold that her right to survivor benefits was governed by the terms of the Act and it terminated when she failed to comply with the Act's application requirements within one year of her husband's death. We hold further that the requirements of Section 10-11-14.5(A) are reasonably related to the legitimate purposes of PERA and are, therefore, constitutional.

**{44}** We affirm.

**{45}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *Martinez v. PERA of New Mexico*, No. 31,310**

**ADMINISTRATIVE LAW AND PROCEDURE**
Administrative Appeal
Arbitrary and Capricious Actions

Due Process
Judicial Review
Legislative Intent
Standard of Review
Timeliness

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review

**CONSTITUTIONAL LAW**
Due Process

**EMPLOYMENT LAW**
Health, Pension, and Retirement Benefits

**GOVERNMENT**
Public Employee

**STATUTES**
Interpretation
Legislative Intent