This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38511**

**CHAZ NIXON,**

Worker-Appellant,

v.

**HYDROTECH SERVICES**
**and ZURICH,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Shanon S. Riley, Workers' Compensation Judge**

Dorato & Weems LLC
Derek Weems
Albuquerque, NM

for Appellant

Butt, Thornton & Baehr, P.C.
Jane A. Laflin
Scott F. Stromberg
Nicholas D. Nuñez
Sarah L. Shore
Albuquerque, NM

for Appellee Hydrotech Services

Guebert Gentile & Piazza P.C.
Robert F. Gentile
Lawrence A. Junker
Kendall M. Barnett
Albuquerque, NM

for Appellee Zurich

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Chaz Nixon (Worker) appeals the Workers' Compensation Judge's (WCJ) order granting in part and denying in part Worker's application for bad faith and unfair claims processing. The WCJ found that Hydrotech (Employer) and Zurich (Insurer) engaged in unfair claims processing and awarded Worker a statutory benefit penalty under NMSA 1978, Section 52-1-28.1(B) (1990) of the Workers' Compensation Act (the Act). Worker appeals, arguing that the WCJ (1) misconstrued the Act in issuing the benefit penalty, and (2) erroneously refused to assess his common law bad faith claims. We affirm.

## BACKGROUND

**{2}** The facts in this case are uncontested. In August 2013, Worker suffered a work-related injury—he was electrocuted when a live power line collided with his work truck. Employer immediately drove Worker to the emergency room and began investigating the accident. However, Employer did not report the accident to Insurer or the Workers' Compensation Administration. Rather, Employer directly paid for Worker's medical care from August 2013 to March 2014.

**{3}** Worker filed an initial complaint for workers' compensation benefits in February 2014, and Insurer became aware of the incident in March 2014. Following a mediation in April 2014 the parties entered into a recommended resolution confirming that Worker was entitled to benefits. Thereafter, Worker filed three more complaints seeking additional benefits as well as back payment of the benefits previously identified in the recommended resolution. Insurer finally began making payments in December 2015. However, those payments were only for indemnity moving forward—Insurer had not yet paid for the back-owed benefits.

**{4}** In a May 2016 compensation order, the WCJ found that Worker was entitled to the back-owed indemnity benefits from the date of Worker's accident in August 2013 to December 2015, when Insurer began making indemnity payments. In July 2016, Insurer paid Worker's back-owed indemnity benefits in the amount of $20,172.20. In September 2016, Worker filed another complaint requesting benefits for cardiac treatment related to the August 2013 accident, which the WCJ ordered Employer and Insurer to pay. By the time the claim was resolved in August 2017, Worker had received a total of $225,642.52 in indemnity and medical benefits.

**{5}** In November 2017, Worker filed an application for bad faith and unfair claims processing. Worker alleged fifteen counts of unfair claims processing and bad faith under the Act, as well as fifteen counts of common law bad faith. After a trial, the WCJ entered a compensation order concluding that both Employer and Insurer had committed multiple counts of unfair claims processing, but their conduct did not rise to the level of bad faith.

**{6}** The WCJ assessed a benefit penalty of $1,008.61 against Employer and $2,172.20 against Insurer under Section 52-1-28.1(B) (stating that "[i]f unfair claim processing or bad faith has occurred in the handling of a particular claim, the claimant shall be awarded, in addition to any benefits due and owing, a benefit penalty not to exceed twenty-five percent of the benefit amount ordered to be paid"). The WCJ did not address Worker's common law bad faith claims. Worker filed a motion to reconsider, and the WCJ entered an order reaffirming the benefit penalties assessed against Employer and Insurer. Worker appealed.

**DISCUSSION**

**{7}** Worker argues that the WCJ (1) misconstrued the Act when assigning the benefit penalties against Insurer and Employer, and (2) erred by declining to assess his common law bad faith claims. We summarily dispose of Worker's second argument because our Supreme Court has previously determined that Section 52-1-28.1 provides an exclusive and adequate remedy for bad faith claims. *See Cruz v. Liberty Mut. Ins. Co.*, 1995-NMSC-006, ¶¶ 9, 14, 119 N.M. 301, 889 P.2d 1223. While Worker invites us to overrule *Cruz* and conclude that Section 52-1-28.1 is not an adequate remedy, we do not have authority to overturn Supreme Court precedent. *See Alexander v. Delgado ex. rel. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778.

**{8}** Worker's remaining arguments center on the construction and application of Section 52-1-28.1, which provides the remedy to workers for bad faith and unfair claims processing practices. Worker claims that the WCJ erred in fashioning a remedy under this section by (1) assessing only one benefit penalty against Employer and Insurer despite finding multiple counts of unfair claims processing against each party; (2) improperly calculating the award based on only a portion of the total claim value; and (3) awarding an insufficient benefit penalty of $1,008.61 against Employer and $2,172.20 against Insurer.[1]

**{9}** We apply a de novo standard of review to interpretation of the Act. *Romero v. Laidlaw Transit Servs, Inc.*, 2015-NMCA-107, ¶ 8, 357 P.3d 463. "Our main goal in statutory construction is to give effect to the intent of the [L]egislature." *Grine v. Peabody Nat. Res.*, 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190 (internal quotation marks and citation omitted). "We look first to the plain meaning of the statute's

---

[1]Worker also argues that the WCJ erred in finding that Employer/Insurer's conduct did not constitute bad faith under Section 52-1-28.1. To the extent Worker argues the WCJ misapplied the legal standard for bad faith claims under the Act, we find no support for that in the record. The WCJ's findings were based on the definition for bad faith in 11.4.1.7(C) NMAC. Worker offers UJI 13-1718 NMRA as an additional definition for statutory bad faith, but concedes that he raises this argument for the first time on appeal. We decline to address this unpreserved issue. *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717. We also observe that, although the WCJ concluded that the Employer and Insurer's conduct did not amount to bad faith, the WCJ concluded that their conduct constituted unfair claims practices for purposes of Section 52-1-28.1 and awarded Worker a benefit penalty from each party. The statutory benefit penalty appears to be the same whether the conduct amounts to bad faith or unfair claims processing, and Worker has not explained why the designation matters for purposes of the relief he received under the Act. *See* § 52-1-28.1.

words, and we construe the provisions of the Act together to produce a harmonious whole." *Id.* (internal quotation marks and citation omitted). "[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (internal quotation marks and citation omitted).

## I. The WCJ Did Not Err in Awarding a Single Benefit Penalty From Each Party

**{10}** The WCJ found that Employer committed nine counts of unfair claims processing and Insurer committed six counts. Worker argues that the plain language of Section 52-1-28.1(B) is nondiscretionary and requires the WCJ to issue a separate benefit penalty for each violation.[2] Section 52-1-28.1(B) provides that "[i]f unfair claim processing or bad faith has occurred in the handling of a particular claim, the claimant shall be awarded, in addition to any benefits due and owing, a benefit penalty not to exceed twenty-five percent of the benefit amount ordered to be paid." While we agree with Worker that Section 52-1-28.1(B) mandates a benefit penalty if WCJ finds that unfair claims processing or bad faith has occurred, Worker has not persuaded us that Section 52-1-28.1(B) requires a separate benefit penalty for each act of unfair claims processing under the circumstances presented.

**{11}** Section 52-1-28.1(B) indicates that the penalty is tied to the handling of a particular claim. *See* 11.4.1.7(E) NMAC (defining the term "claim" as "any allegation of entitlement to benefits or relief under the act, which has been communicated to the employer by the giving of notice as required by the act"). Consequently, by stating that "a benefit penalty"—singular—shall be awarded for unfair claims processing or bad faith in the handling of a particular claim, the Legislature indicated that only one penalty is available for each claim affected by bad faith or unfair claims processing. Based on the plain language of Section 52-1-28.1(B), it appears that the number of penalties available depends on the number of particular claims affected by unfair claims processing or bad faith, and not the number of individual acts of unfair claims processing or bad faith.

**{12}** We find support for this interpretation by way of comparison to Section 52-1-28.1(C), which expressly states that "[i]f an employer, insurer or claim-processing representative has a history or pattern of repeated unfair claim-processing practices or bad faith, the director or a [WCJ] may impose a civil penalty of up to one thousand dollars ($1,000) for *each violation*. The civil penalty shall be deposited in the workers' compensation administration fund." (Emphasis added.) It is telling that the Legislature chose to include a "per violation" measure for the civil penalty in Subsection (C), but not for the benefit penalty to Worker in Subsection (B). Had the Legislature intended to include a "per violation" measure for the number of benefit penalties available to a

---

2Worker also claims the WCJ was required to enumerate the violations that allegedly occurred within each count of unfair claims processing. Worker has failed to cite to where he preserved this argument, and we found no such indication during our independent review. *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). It remains unclear whether Worker made specific allegations of multiple violations under each count, or whether he had asked the WCJ to rule on them as such.

Worker, it could have done so expressly. *See Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 36, 484 P.3d 954 (stating that "when the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional" (internal quotation marks and citation omitted)); *State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)).

**{13}** Worker also argues that construing Section 52-1-28.1(B) to allow only one benefit penalty would undermine the purpose of the statute—to prevent bad conduct. According to Worker, if only single benefit penalty is available no matter how many times an employer or insurer violates the Act, employers and insurers would have "carte blanche to violate the . . . Act at will as there would be no effective remaining remedy after the first assessed award." However, we see no indication that a WCJ would be precluded from awarding another benefit penalty if an employer or insurer later engages in other acts of unfair claims processing or bad faith. Regardless, because those facts are not before us today, we decline to consider the matter further.

## II.    The WCJ Did Not Err in Calculating the Benefit Penalty

**{14}** Worker argues the WCJ erred by calculating the benefit penalty based only on the value of back-owed indemnity benefits, $20,172.20, rather than as a percentage of the total amount of benefits he received during the pendency of this action, $225,642.52. Section 52-1-28.1(B) requires "a benefit penalty not to exceed twenty-five percent of the benefit amount ordered to be paid." As discussed in the previous section, the benefit penalty is tied to unfair claims processing or bad faith in the handling of a particular claim. Consequently, we see no error in the WCJ's determination that the benefit penalty should be calculated based on the portion of the claim specifically affected by the acts of unfair claims processing or bad faith.

**{15}** Contrary to Worker's argument, nothing in the plain language suggests that "benefit amount ordered to be paid" refers to all benefits paid as a result of court orders. Section 52-1-28.1(B); *see Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787 ("Our courts have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent."). Worker also argues that our Supreme Court "explicitly instructed that the entire value of the claim is the basis from which penalties would be calculated." Worker relies on *Cruz*, where the Court held, "[u]nder Section 52-1-28.1, the employee receives all compensation for benefits due and owing and 'shall receive' an extra 'benefit penalty' of up to twenty-five percent of the claim." 1995-NMSC-006, ¶ 14. This portion of *Cruz* speaks to the adequacy of the statute as a remedy, rather than its application. *See id*. Nowhere in *Cruz* did the Court specifically address how to calculate a benefit penalty under Subsection (B), much less the statute's meaning of "benefit amount ordered to be paid."

**{16}** We conclude the award of a benefit penalty under Subsection (B) directly correlates to the specific allegations of bad faith or unfair claims processing in

conjunction with a particular claim, not necessarily the entire compensation a worker has received. Here, Worker has not indicated that his allegations of unfair claims processing relate to other parts of his claim beyond the $20,172.20 in back-owed indemnity benefits. As such, Worker has not demonstrated that the WCJ erred in calculating the benefit penalty based on that portion of his claim.

### III. The WCJ Did Not Abuse Its Discretion in the Amount of the Benefit Penalty

**{17}** Using the value of the back-owed indemnity benefits as its measure, the WCJ assessed a five percent penalty against Employer and ten percent penalty against Insurer: $1,008.61 and $2,172.20 respectively. Worker argues the WCJ abused its discretion in its assessment of the benefit penalties, characterizing them as "miserly" and arguing, "such a small award shocks the conscience" and fails to "meet the purpose of Section 52-1-28.1." We review the WCJ's award of benefit penalty pursuant to Subsection (B) for an abuse of discretion. *See Romero*, 2015-NMCA-107, ¶ 8.

**{18}** Worker's only support for his assertion that the benefit penalty awarded shocks the conscience is that, at times relevant to this appeal, Insurer's attorney also represented a party in a different case who had been previously subjected to a twenty-five percent benefit penalty. According to Worker, if a twenty-five percent benefit penalty did not "deter similar conduct among an attorney's own clients," the penalties here will not have any deterrent effect.

**{19}** Worker has failed to provide any compelling argument or authority that a five and ten percent penalty is insufficient to deter Employer and Insurer. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 310 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Section 52-1-28.1 only requires a single benefit penalty of up to twenty-five percent of the benefits ordered as to a particular claim. Furthermore, even if a WCJ assigns a relatively low benefit penalty, our Supreme Court has concluded that Section 52-1-28.1 provides an adequate deterrent effect. *See Cruz*, 1995-NMSC-006, ¶ 14 ("Although this penalty may not be a great amount when the amount of the claim is small, it provides sufficient deterrence to prevent an insurer from denying benefits in bad faith and enforces the public policy against the bad-faith handling of workers' compensation claims."). The amount of the benefit penalty is a discretionary matter, and Worker has not demonstrated that the WCJ abused its discretion in assessing a five percent benefit penalty against Employer and a ten percent benefit penalty against Insurer.

### CONCLUSION

**{20}** For the foregoing reasons, we affirm the WCJ's order denying in part and granting in part Worker's application for bad faith and unfair claims processing.

**{21} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**