The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **August 5, 2024**

**No. A-1-CA-41467**

**IN THE MATTER OF HEATHER LEWIS,**
**a person alleged to be in need of mental healthcare.**

**STATE OF NEW MEXICO,**

     Petitioner-Appellee,

v.

**HEATHER LEWIS,**

     Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James M. Hudson, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Lawrence M. Marcus, Assistant Solicitor General
Albuquerque, NM

for Appellee

Sage Legal Planning Law Firm, P.C.
Katie Gwartney Roehlk
Roswell, NM

for Appellant

# OPINION

**BOGARDUS, Judge.**

{1}   Respondent Heather Lewis appeals the district court's order involuntarily committing her to the New Mexico Behavioral Health Institute (NMBHI) for thirty days, pursuant to NMSA 1978, Section 43-1-11(A) (2009); and its order denying the Petitioner State of New Mexico's motion seeking an extension of that commitment, pursuant to NMSA 1978, Section 43-1-12 (2009). On appeal, Respondent argues that the district court exceeded its statutory authority and violated her due process rights by delaying the start of her commitment until she was transported to NMBHI without the additional protections required by Section 43-1-12 for extending involuntary commitments. For the following reasons, we hold that the district court exceeded its statutory authority.

**BACKGROUND**

{2}   On August 25, 2023, Respondent voluntarily sought treatment at the emergency room at Eastern New Mexico Medical Center (ENMMC). Respondent was struggling with suicidal thoughts and requested admission to Sunrise Mental Health (Sunrise) for treatment. Because of Respondent's history of mental health issues and psychiatric admissions at ENMMC, on August 31, 2023, Petitioner asked the district court to involuntarily commit Respondent to NMBHI for thirty days.

{3} On September 5, 2023, after a hearing on the petition, the district court determined by clear and convincing evidence that Respondent presented a likelihood of serious harm to herself and would likely benefit from the proposed commitment. Additionally, the district court concluded that Respondent's commitment was consistent with the least drastic means available. The next day, the district court filed an order reflecting its findings and committing Respondent to NMBHI "for a period not to exceed [thirty] days, commencing on the date of filing of this order." The court further ordered Respondent to remain at Sunrise "until the Chaves County Sheriff's Department is prepared to transport [R]espondent to [NMBHI]."

{4} On September 22, 2023, Petitioner filed a motion requesting the district court commit Respondent for long-term treatment at NMBHI. The motion stated that Respondent had not yet been transferred to NMBHI because, "[a]s of September 22, 2023, no bed ha[d] been made available." On September 28, 2023, the district court held a hearing on the motion to extend Respondent's commitment. At the hearing, Respondent argued that she had not been served with a second petition seeking to extend her commitment as required by statute. *See* § 43-1-12(A). The district court agreed with Respondent that no petition had been filed and further stated that, because the order of commitment was entered on September 6, 2023, Petitioner had missed the deadline to file the required petition. The district court then denied

Petitioner's motion, stating that "the original commitment will continue for up to thirty days."

{5}     On October 4, 2023, the district court entered an order denying Petitioner's motion and replaced its first order of commitment. Despite its oral ruling that Petitioner's motion failed to abide by the requirements of Section 43-1-12(A), inexplicably, the district court found that Petitioner's motion was premature "[b]ecause Respondent ha[d] not been transported to the [NMBHI, and therefore] the commitment ha[d] not yet been effected and the period of commitment ha[d] not yet begun." Respondent was not transferred to NMBHI until October 13, 2023. Respondent was released on November 12, 2023—sixty-eight days after the district court's first order of commitment. Respondent appeals both the district court's first order involuntarily committing her to NMBHI for no longer than thirty days and its subsequent order denying Petitioner's motion and altering the date her commitment began.

**DISCUSSION**

{6}     Respondent argues that the district court exceeded its statutory authority by amending its original order and delaying the start date of her involuntary commitment until she was transported to NMBHI. Specifically, Respondent asserts the district court's action exceeded its statutory authority because (1) the district court's determination that her commitment did not begin until her transport was

3

contrary to the plain language of Section 43-1-11, and (2) by delaying the start date of Respondent's commitment, the district court effectively extended her commitment beyond the thirty-day maximum imposed by Section 43-1-11(E) without abiding by the statutory requirements for extending commitments. In response, Petitioner asserts that Respondent's arguments fail because (1) Respondent's appeal is moot; (2) Respondent failed to preserve them; (3) the district court's amendment of the order for commitment was in accordance with Section 43-1-11; and (4) even if the district court's action was not in accordance with Section 43-1-11, it constituted a valid extension of Respondent's commitment under Section 43-1-12. We conclude that the district court exceeded its statutory authority when it delayed the start date of Respondent's commitment until she was transported to NMBHI.

**I.     Mootness**

{7}     First, we address Petitioner's argument that because Respondent is no longer confined, Respondent's appeal should be dismissed as moot. Respondent concedes that she has been released from NMBHI and there is no current controversy for which this Court can provide relief. Nonetheless, Respondent points out that the issues she presents are of substantial public interest and are capable of repetition, yet evading review, and we agree.

{8} Generally, "[i]t is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded." *Lucero v. Centurion Corr. Healthcare of N.M.*, *LLC*, 2023-NMCA-050, ¶ 18, 534 P.3d 258 (internal quotation marks and citation omitted). However, we "may do so as a matter of discretion when an issue is of substantial public interest or capable of repetition yet evading review." *White v. Farris*, 2021-NMCA-014, ¶ 34, 485 P.3d 791 (internal quotation marks and citation omitted). This Court has previously determined that procedural errors affecting thirty-day involuntary commitments are issues of substantial public interest capable of repetition and evading review. *See State v. Pernell*, 1979-NMCA-008, ¶ 9, 92 N.M. 490, 590 P.2d 638 (determining the denial of a motion to dismiss the appeal as moot was properly denied because an error in a thirty-day involuntary commitment is both capable of repetition and an issue of substantial public importance). We see no reason to treat this case differently.

{9} Because these commitments are statutorily limited to thirty days, the time is almost always too short to appeal. Therefore, the issues in this case are capable of repetition without review. This court just "cannot be oblivious to the importance of the number of persons who are affected by involuntary commitment orders." *Id.* (omission, internal quotation marks, and citation omitted). Because the issue of a district court's authority to extend involuntary commitments is a matter of public

importance that may evade our review due to the short-term nature of commitment, we exercise our discretion to decide it.

**II.     Preservation**

{10}     We next address Petitioner's contention that Respondent failed to preserve her arguments for appeal. Generally, "a court sitting in an appellate capacity will not review an issue raised for the first time on appeal." *White*, 2021-NMCA-014, ¶ 32. However, "[i]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party." Rule 12-321(A) NMRA.

{11}     In this case, Respondent had no opportunity to object to the district court's delay of the start of her thirty-day commitment until after the district court filed its written order denying Petitioner's motion to extend her commitment. Until this order was filed, Respondent believed she was already serving the commitment imposed by the district court's original order that stated Respondent's commitment began on the date it was filed. Moreover, by denying Petitioner's motion to extend her commitment during the hearing on Petitioner's motion to extend, the district court affirmed Respondent's belief that her commitment would end thirty days from September 6, 2023. Only after the hearing, in the district court's order denying Petitioner's motion and amending its original order to involuntarily commit Respondent, she was informed that her period of commitment had not yet begun.

Appealing the district court's order was the first opportunity Respondent had to object to this order. As a result, Respondent did not need to preserve her objections to the order for this Court to review them. *See* Rule 12-321(A); *see also Robison v. Katz*, 1980-NMCA-045, ¶¶ 27-28, 94 N.M. 314, 610 P.2d 201 (concluding that it was unreasonable for the firm representing Respondent at the time to object and thus Respondent had no opportunity to object below). Having so decided, we now turn to Respondent's substantive challenges to the district court's orders.

**III.    Statutory Authority Under Section 43-1-11**

{12}    Respondent argues that the district court erred when it determined that Respondent's commitment did not begin until she was transported to NMBHI. Specifically, Respondent asserts that the district court exceeded its statutory authority by delaying Respondent's commitment based on a distinction between residential mental health facilities and evaluation facilities that does not exist in the statutory language. We agree.

{13}    This issue requires us to engage in statutory interpretation, which requires review de novo. *See Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. "In construing a particular statute, [our] central concern is to determine and give effect to the intent of the Legislature." *N.M. Dep't of Health v. Compton*, 2001-NMSC-032, ¶ 18, 131 N.M. 204, 34 P.3d 593 (alteration, internal quotation marks, and citation omitted). In doing so, we start with the plain language

of the statute because "[its] plain language is the most reliable indicator of legislative intent." *Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787. When such "language . . . is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted).

{14}    Section 43-1-11(E) states in relevant part that "the court may order a commitment for evaluation and treatment not to exceed thirty days." The statute's language is clear and unambiguous. Both the phrase "not to exceed thirty days" and "for evaluation and treatment" modify the word "commitment." The phrase "for evaluation and treatment" indicates the allowable purpose of the commitment while the phrase "not to exceed thirty days" specifies the maximum commitment period. Neither phrase modifies the other, thus neither phrase is determinative of the other. And so, no matter the purpose of the commitment—for evaluation, treatment, or both—thirty days is the maximum number of days a person can be committed under Section 43-1-11.

{15}    Yet, this is insufficient to answer the question before us. To determine if the district court erred, we must determine when Respondent's commitment began. The statute does not state when the thirty-day time begins. Nevertheless, we can infer from the purpose of the statute when the Legislature intended the time to begin. Our

Supreme Court has stated that the purpose served by involuntary commitment is balancing Petitioner's interest in "providing care to its citizens who are unable because of emotional disorders to care for themselves . . . [and its interest] under its police power to protect the community from the dangerous tendencies of some who are mentally ill" with the interest of the person in being free from the "significant deprivation of liberty" caused by being committed. *Compton*, 2001-NMSC-032, ¶ 7. The Legislature struck this balance by enacting "a scheme under which individuals are entitled to progressively greater procedural protection in response to increased periods of involuntary civil commitment." *Id.* ¶ 10. As a result, the thirty-day maximum for initial commitment begins the date of the seven-day hearing required by Section 43-1-11(A). The increased procedural protection for deprivation of liberty longer than the initial thirty days permitted by Section 43-1-11 indicates the Legislature intended the time period to commence the moment a person is involuntarily deprived of their liberty by court order.

{16}    Petitioner argues that because NMSA 1978, Section 43-1-22 (1977) gives the district court the authority to "direct the sheriff . . . to furnish suitable transportation [to a residential mental health facility] in order to effect [an ordered] commitment," the court must also have the authority to delay the start of commitment until the client is transported. However, nothing in Section 43-1-22 indicates when commitment begins. Moreover, the district court's authority to facilitate a client's

transportation to a specific facility is not the equivalent of the authority to delay the start date of a commitment period until a client is transported to that facility. Furthermore, no other provision in the statute requires a person to be transported to, or to be treated at a specific type of facility for commitment to begin. Reading Section 43-1-22 to allow the district court to delay the start date of a commitment until a person is transported to a specific facility, despite the deprivation of a person's liberty by court order would be contrary to the balance the Legislature struck between Petitioner's interests and the person's liberty when creating the procedural safeguards in the statute. In striking this balance, the Legislature set the maximum period of deprivation of liberty that can be ordered by a court, without further proceedings and a further determination that an extended commitment is necessary, at thirty days regardless of where that deprivation occurs. Therefore, the period for an involuntary commitment must begin the moment a person is deprived of their liberty by court order, regardless of whether or not they have been transported to the facility at which they were specifically ordered to serve their commitment, even if that facility better meets their treatment needs.

{17}     Because commitment begins the moment a person is deprived of their liberty pursuant to an order of commitment, we conclude that the district court erred in amending its order for commitment to delay the start of the permissible thirty-day period until Respondent was transported to NMBHI. Respondent was initially

10

committed to NMBHI on September 6, 2023, "for a period not to exceed [thirty] days, commencing on the date of filing of this order." Commencing the commitment on the date of the seven-day hearing after involuntary admission is required by statute. *See* § 43-1-11(E); *Compton*, 2001-NMSC-032, ¶ 18. On the same day, the district court ordered Respondent to remain at Sunrise, the facility she had voluntarily entered for treatment, until the sheriff could transport her to NMBHI. Therefore, as of September, 6, 2023, Respondent was effectively deprived of her liberty by the district court's order of commitment, and thus her thirty-day commitment began on that day. Because the maximum number of days a person can be committed without Petitioner and court abiding by the additional procedural protections of Section 43-1-12 is thirty days, *compare* § 43-1-11(E), *with* § 43-1-12(E),—Respondent's commitment was statutorily required by statute to end October 5, 2023. Petitioner's inability to timely transport Respondent to the facility to which she was initially committed has no bearing on the statute's time lines. Therefore, the district court erred when it delayed the start date of Respondent's commitment until she was transported to NMBHI.

**IV.     The District Court's Actions Under Section 43-1-12**

{18}     Lastly, we address Petitioner's argument that even if the district court's delay of the start date of Respondent's commitment was error under Section 43-1-11, it

11

was functionally a proper extension of the thirty-day commitment under Section 43-1-12. Again, we disagree.

{19} Section 43-1-12(A) requires that the physician or evaluation facility at which the client is committed file a petition seeking extension within twenty-one days of the beginning of the commitment. The petition must "explain the necessity for extended commitment, specify the treatment that has been provided during the evaluation and include an individual treatment plan for the proposed commitment period." *Id.* Furthermore, a hearing must be held on the petition before the expiration of the initial commitment period and the client must be provided the same rights to be heard at the extended commitment hearing as they were provided by Section 43-1-11(B) in the hearing prior to the original commitment plus the "right to a trial by a six-person jury, if requested." Section 43-1-12(B). Finally, for an extended commitment to be appropriate, the district court must make a finding by clear and convincing evidence that the client continues to present a likelihood of harm to themselves or others, and "that extended treatment is [not only] likely to improve the client's condition [but also] that the proposed extended commitment is consistent with the least drastic means principle." Section 43-1-12(E).

{20} Here, neither the petition nor the hearing afforded Respondent the procedural protections required by statute, nor did the district court make the required findings, which permit the court to extend Respondent's commitment beyond the initial thirty-

12

day period. First, although Petitioner's motion provided a cursory explanation from Sunrise why extended commitment was necessary and attached Respondent's medical records describing Respondent's treatment so far, it did not contain an individual treatment plan for the proposed extended commitment. Such information is critical to determine whether extended commitment is "consistent with the least drastic means principle." *See* NMSA 1978, § 43-1-3(D)(2) (2023, amended 2024) (defining "consistent with the least drastic means principle" as including "no requirement for residential care except as reasonably necessary for the administration of treatment or for the protection of the client or others from physical injury").

{21} Second, because the district court determined that Petitioner's motion did not constitute a proper petition for extended commitment under the statute, Respondent neither presented evidence on her own behalf nor contested the evidence and opinions provided by Petitioner as required under Section 43-1-11(B). *See* § 43-1-12(B) ("A hearing shall be held upon the petition . . . at which the client shall have all rights granted to the client under Section 43-1-11."). Moreover, the district court's ruling that Petitioner's motion was inadequate and that "the original commitment will continue for up to thirty days," denied Respondent the right to an evidentiary hearing, including the right to request a six-person jury trial.

**{22}** Finally, because the district court denied Petitioner's motion as inadequate or premature, the court made none of the findings required by Section 43-1-12 to extend a commitment beyond thirty days: whether Respondent remained dangerous to herself or others; whether extending Respondent's treatment would improve her condition; or whether an extended commitment was consistent with the least drastic means principle. Without such findings, made after a hearing with the required procedural protections, a district court cannot extend a commitment beyond the thirty-day maximum set by Section 43-1-11. Therefore, the district court's action in amending the start date of Respondent's commitment did not constitute a proper extension of commitment under Section 43-1-12.

**CONCLUSION**

**{23}** For the foregoing reasons, we conclude that the district court's delay of the start date of Respondent's involuntary commitment was contrary to law, we reverse and remand to the district court so that it can vacate its order.

**{24}** **IT IS SO ORDERED.**

_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**JANE B. YOHALEM, Judge**

14